# EXHIBIT A

## **DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Plumbing Holdings Corporation, et al.,[1] | ) | Case No. 09-14413 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

---

## DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

**DRINKER BIDDLE & REATH LLP**
Andrew C. Kassner (DE 4507)
Howard A. Cohen (DE 4082)
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

- and -

Michael P. Pompeo *(admitted pro hac vice)*
500 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 360-1100
Facsimile: (973) 360-9831

Counsel for Debtors and Debtors-in-Possession

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtor's federal tax identification number, are: Plumbing Holdings Corporation (5376) and Jones Stephens Corp. (8381).

# INTRODUCTION

Plumbing Holdings Corporation and Jones Stephens Corp., the debtors and debtors-in-possession herein, propose the following joint plan of reorganization under section 1121(a) of title 11 of the Bankruptcy Code.[2] The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code (as hereinafter defined). Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, businesses, properties, results of operations and projections of future operations, as well as a summary and description of the Plan and certain related matters. No materials other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein have been authorized by the Debtors for use in soliciting acceptances or rejections of the Plan.

ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING.

## ARTICLE 1
### DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### Section 1.01    Scope Of Defined Terms; Rules Of Construction

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used but not defined herein shall have the meanings ascribed to them in Article I of this Plan. Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### Section 1.02    Definitions

Unless the context requires otherwise, the following terms used in the Plan shall have the following meanings:

1.   "**ACAS**" means American Capital, Ltd.

2.   "**ACAS Effective Date Fees**" means $500,000 of the documented professional fees and expenses incurred by the Subordinated Agent in connection with the Chapter 11 Cases as of the Effective Date.

3.   "**ACAS Professional Fees**" means the ACAS Effective Date Fees and Installment Fees.

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in Section 1.01 of this Plan.

4.  "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims.

5.  "**Administrative Claim Bar Date**" means the date that is 45 calendar days after the Effective Date.

6.  "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

7.  "**Agent**" means Ares Capital Corporation in its capacity as agent under the Amended and Restated Credit Agreement.

8.  "**Allowed**" means all or that portion, as applicable, of any Claim against any Debtor (i) that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time, as liquidated in amount and not disputed or contingent, and for which no contrary or superseding Proof of Claim has been filed, (ii) that has been expressly allowed by Final Order or under the Plan, (iii) that has been compromised, settled or otherwise resolved pursuant to Final Order of the Bankruptcy Court or the Plan, (iv) that the Debtors do not timely object to in accordance with the Plan, or (v) that is a Lender Secured Claim; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered "Allowed Claims" for any other purpose under the Plan or otherwise, except if and to the extent otherwise determined to be Allowed as provided herein. Unless otherwise specified under the Plan, under the Bankruptcy Code or by order of the Bankruptcy Court, Allowed Claims shall not, for any purpose under the Plan, include any interest, costs, fees or charges on such Claim from and after the Petition Date.

9.  "**Amended and Restated Credit Agreement**" means the credit agreement among Reorganized JSC as borrower, Reorganized Parent as guarantor, the Agent, and the Existing Lenders dated as of the Effective Date providing for the Amended and Restated Term Loan Facility and Amended and Restated Revolving Credit Facility and which shall amend and restate the Existing Credit Agreement pursuant to and consistent with the terms set forth in the Amended and Restated Credit Facility Term Sheet. The Amended and Restated Credit Agreement shall be filed as a Plan Supplement.

10. "**Amended and Restated Credit Documents**" means the Amended and Restated Credit Agreement and all ancillary agreements, documents, and instruments to be issued or given in connection with the Amended and Restated Credit Agreement.

11. "**Amended and Restated Credit Facility Term Sheet**" means the Amended and Restated Credit Facility Term Sheet as set forth in Annex A to the Lender/ACAS Term Sheet.

12. "**Amended and Restated Revolving Credit Facility**" means the $4,000,000 revolving credit loan to be extended by the Revolving Lender to Reorganized JSC as borrower and Reorganized Parent as guarantor on the Effective Date pursuant to the Amended and Restated Credit Documents and consistent with the terms set forth in Amended and Restated Credit Facility Term Sheet.

13. "**Amended and Restated Term Loan Facility**" means the term loan facility under the Existing Credit Agreement which shall be amended and restated effective as of the Effective Date pursuant to the Amended and Restated Credit Documents and consistent with the terms set forth in Amended and Restated Credit Facility Term Sheet.

14. "**Approval Order**" means the Order (i) Approving the Disclosure Statement; (ii) Approving Solicitation Procedures; (iii) Allowing and Estimating Certain Claims for Voting Purposes; (iv) Approving Forms of Ballots and Establishing Procedures for Voting on the Debtors' Joint Plan of Reorganization; and (v) Scheduling a Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Joint Plan of Reorganization, entered by the Bankruptcy Court on November 12, 2010 [Docket No. 647].

15. "**Assumption Effective Date**" means the date upon which the assumption of an executory contract or unexpired lease under this Plan is deemed effective.

16. "**Assumption Party**" means a counterparty to an executory contract or unexpired lease to be assumed and/or assigned by the Reorganized Debtors.

17. "**Avoidance Actions**" mean all claims and causes of action which any or all of the Debtors have or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

18. "**Ballot**" means the voting form distributed to each Holder of an Impaired Claim entitled to vote, on which the Holder is to indicate acceptance or rejection of the Plan in accordance with the Voting Instructions and make any other elections or representations required pursuant to the Plan or the Approval Order.

19. "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended, to the extent applicable to the Chapter 11 Cases.

20. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or any other court with jurisdiction over the Chapter 11 Cases.

21. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, each as now in effect or as hereafter amended, to the extent applicable to the Chapter 11 Cases.

22. "**Bar Date**" means the date(s), if any, designated by the Bankruptcy Court as the last dates for filing proofs of Claim or Interest against the Debtors.

23. "**Benefit Plans**" means all benefit plans, policies and programs sponsored by the Debtors, including, without limitations, all savings plans and health and welfare plans.

24. "**Business Day**" means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

25. "**Cash**" means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

26. "**Cash Collateral**" means "cash collateral" as defined in section 363(a) of the Bankruptcy Code.

27. "**Cash Collateral Order**" means the Stipulated Final Order Authorizing Interim Use Of Cash Collateral, Providing Adequate Protection Including Replacement Liens, And Granting Related Relief, entered by the Bankruptcy Court on January 26, 2010.

28. "**Cash On Hand**" means all of the Debtors' Cash on hand as of the Effective Date.

29. "**Cause of Action**" means, without limitation, any and all actions, proceedings, causes of action (other than Avoidance Actions), controversies, liabilities, obligations, rights, rights of set-off, remedies, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, Claims, counterclaims, cross-claims, affirmative defenses and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.  Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtors or their Estates, "Causes of Action" shall include (i) all rights of setoff, counterclaim or recoupment and Claims on contracts or for breaches of duties imposed by law or equity, and (ii) Claims and defenses such as fraud, mistake, duress, usury and any other defenses set forth in section 558 of the Bankruptcy Code.

30. "**Chapter 11 Cases**" means (a) when used in reference to a particular Debtor, the chapter 11 case pending for that Debtor, and (b) when used in reference to all of the Debtors, the above-captioned procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

31.   "**Claim**" means a claim against one or both of the Debtors, whether or not asserted or Allowed, as defined in section 101(5) of the Bankruptcy Code.

32.   "**Claims Agent**" means The Garden City Group, Inc.

33.   "**Claims Objection Deadline**" means 11:59 p.m. (prevailing Eastern time) on the 90th calendar day after the Effective Date, subject to further extensions or exceptions as may be ordered by the Bankruptcy Court for cause.

34.   "**Class**" means any group of Claims or Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

35.   "**Collateral**" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

36.   "**Committee**" means the official committee of unsecured creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

37.   "**Company**" means, collectively JSC and Parent.

38.   "**Confirmation**" means entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Cases.

39.   "**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

40.   "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

41.   "**Confirmation Order**" means the order of the Bankruptcy Court entered pursuant to section 1129 of the Bankruptcy Code confirming the Plan.

42.   "**Consummation**" means the occurrence of the Effective Date.

43.   "**Contingent Claim**" means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event that has not yet occurred as of the date on which such Claim is sought to be estimated or on which an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

44. "**Corporate Documents**" means the certificate of incorporation and bylaws (or any other applicable organizational documents) of the Debtors in effect as of the Petition Date.

45. "**Cortec**" means Cortec Group Fund IV, L.P., each of its general partners, Cortec Co-Investment Fund (IV) L.L.C, Cortec Management IV, LLC, and Cortec Group Management Services, LLC and CoGr, Inc.

46. "**Cortec Common Stock**" means 3% of the New Common Stock, fully diluted after giving effect to options authorized to be granted under the Management Incentive Plan, to be distributed to Cortec in accordance with the Plan on the Effective Date.

47. "**Cortec Deposit**" means the $100,000 deposit held by Cortec.

48. "**Cortec Professional Fees**" means $180,000 of the documented professional fees and expenses incurred by Cortec in connection with the Chapter 11 Cases as of the Effective Date.

49. "**Creditor**" means any Person who holds a Claim against any Debtor.

50. "**Customs Obligations**" means the duties, taxes or other charges related to the Debtors' importation of raw materials, partially completed products and finished products into the United States of America, including, without limitation, obligations under the Surety Bond and Letter of Credit.

51. "**Customer Program**" means the Debtors' customer programs and practices as to which the Debtors were authorized to honor pre-petition obligations and to otherwise continue in the ordinary course of business by the Order Authorizing The Debtors And Debtors-In-Possession To Honor Prepetition Obligations To Customers And Otherwise Continue Customer Programs In The Ordinary Course Of Business, entered by the Bankruptcy Court on December 17, 2009 [Docket No. 27].

52. "**Cure**" means a distribution made in the ordinary course of business following the Effective Date pursuant to an executory contract or unexpired lease assumed under section 365 or 1123 of the Bankruptcy Code (i) in an amount equal to the Proposed Cure Amount (including if such Proposed Cure Amount is zero dollars) or (ii) if a Treatment Objection is filed with respect to the applicable Proposed Cure Amount, then in an amount equal to the unpaid monetary obligations owing by the Debtors and required to be paid pursuant to section 365(b) of the Bankruptcy Code, as may be (x) determined by Final Order or (y) otherwise agreed upon by the parties.

53. "**Debtor(s)**" means each of Plumbing Holdings Corporation and Jones Stephens Corp.

FP01/ 6376935.8

54. "**Disallowed Claim**" means any Claim or any portion thereof that (i) has been disallowed by a Final Order of the Bankruptcy Court, (ii) is listed in the Schedules as "$0," contingent, disputed or unliquidated and as to which a proof of claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, (iii) has been agreed to be equal to "$0" or to be expunged pursuant to the Claims Settlement Procedures Order or otherwise or (iv) is not listed on the Schedules and as to which a proof of claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

55. "**Disbursing Agent**" means Reorganized Debtors or any Person or Entity designated or retained by Reorganized Debtors, in their sole discretion and without the need for any further order of the Bankruptcy Court, to serve as disbursing agent pursuant to the Plan.

56. "**Disclosure Statement**" means the disclosure statement relating to this Plan, including all exhibits and schedules thereto, as amended, supplemented or modified from time to time, in each case, as approved pursuant to section 1125 of the Bankruptcy Code by the Bankruptcy Court in the Approval Order.

57. "**Disputed**" means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim or Interest was not timely or properly filed, (c) proof of which was timely and properly filed that does not set forth an amount and which has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, (d) that is disputed in accordance with the provisions of this Plan, or (e) as to which the Debtors have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; *provided*, *however*, that for purposes of determining whether a particular Claim or Interest is a Disputed Claim or Disputed Interest prior to the expiration of any period of limitation fixed for the interposition by the Debtors of objections to the allowance of Claims or Interests, any Claim or Interest that is not an Allowed Claim or Allowed Interest shall be deemed Disputed.

58. "**Distribution Date**" means any of (i) the Effective Date, (ii) the Interim Distribution Dates and (iii) the Final Distribution Date.

- 7 -

59. "**EBITDA**" shall have the meaning set forth in Existing Credit Agreement as amended pursuant to the Amended and Restated Credit Agreement.

60. "**Effective Date**" means the Business Day on which all conditions to Consummation of the Plan set forth in the Plan have been satisfied or waived as permitted hereunder.

61. "**Employee Agreement**" means any agreement (other than a collective bargaining agreement or standard form documents or policies executed or acknowledged by newly-hired employees) between any of the Debtors and any current or former directors, officers or employees of any of the Debtors.

62. "**Employee Incentive Program**" means the employee incentive plan of the Reorganized Debtors, which employee incentive plan will be established and implemented by the initial board of the Reorganized Debtors as soon as reasonably practicable after the Effective Date and pursuant to which the sum of $200,000 shall be allocable and distributable in the form of discretionary bonuses to employees of the Reorganized JSC should EBITDA for the 2010 fiscal year be greater than or equal to $7,000,000.

63. "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code as well as any limited partnership and limited liability company.

64. "**Equity Interest**" means a stockholder's proportionate share of the ownership interest in a corporation's capital stock and surplus.

65. "**Estate(s)**" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

66. "**Excluded Claims**" means all Avoidance Actions or other claims or Causes of Action against any or all of the Existing Lenders, Existing Agent, ACAS, the Subordinated Noteholders or Cortec in any capacity, including claims or Causes of Action arising from or otherwise relating to the Chapter 11 Cases, the Existing Credit Agreement, the Subordinated Note Purchase Agreement, the Existing Management Agreement and any transactions or documents related thereto.

67. "**Exculpated Claim**" means any Claim related to any act or omission prior to the Effective Date in connection with, relating to, or arising out of the Debtors' Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of the Plan Securities, or the distribution of property under the Plan or any other agreement; provided, however, that Exculpated Claims shall not include any act or omission that is

determined in a Final Order to have constituted willful misconduct, gross negligence, intentional unauthorized misuse of confidential information that causes damages, or criminal misconduct.

68. "**Exculpated Party**" means each of: (a) the Debtors, the Reorganized Debtors and their Affiliates, (b) Cortec, (c) the Existing Agent, (d) the Existing Lenders, (e) the Agent, (f) the Revolving Lender and LC Lender, (g) the Subordinated Agent and the Subordinated Noteholders, (h) the Committee, (i) members of the Committee, in such capacity as Committee member, (j) the Disbursing Agent; and (k) with respect to each of the foregoing Entities in clauses (a) through (j), such Entities' subsidiaries, affiliates, managed accounts or funds, officers, directors, principals, partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other representatives (including their respective officers, directors, members, employees and professionals of the respective Entities in clause (k) herein), in their capacity as such.

69. "**Existing Agent**" means CIT Lending Services Corporation, as agent under the Existing Credit Agreement.

70. "**Existing Credit Agreement**" means that certain Credit Agreement dated as of September 7, 2006, as amended, by and among JSC as borrower and Parent as guarantor and the Existing Agent and Existing Lenders.

71. "**Existing Lenders**" means the lenders under the Existing Credit Agreement.

72. "**Existing Management Agreement**" means that certain Amended and Restated Management Advisory Agreement by and between Parent and Cortec Management IV, LLC dated as of December, 2008 and effective as of September 7, 2006.

73. "**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument or rehearing has been resolved by the court in which such motion was filed; provided, however, that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating

to such order or judgment shall not cause such order or judgment not to be a Final Order.

74. "**General Unsecured Claim**" means any Claim, including, without limitation, any Rejection Claim, against any of the Debtors that is not (a) included in Classes 1, 2, 3, 4 and 6, (b) an Administrative Claim, (c) a Priority Tax Claim, or (d) an Intercompany Claim.

75. "**Global Compromise**" shall have the meaning set forth in Section 3.04 of the Plan.

76. "**Governmental Unit**" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

77. "**Holder**" means the beneficial holder of any Claim or Interest.

78. "**Indemnification Provision**" means each of the indemnification provisions currently in place whether in the bylaws, certificates of incorporation or other formation documents in the case of a limited liability company, board resolutions or employment contracts for the current directors, officers, members (including *ex officio* members), employees, attorneys, other professionals and agents of the Debtors and such current and former directors, officers and members' respective Affiliates.

79. "**Indemnified Parties**" means, collectively, the Debtors and each of their respective current officers, directors, managers, and employees, each in their respective capacities as such, and solely to the extent that such party was serving in such capacity on the Business Day immediately preceding the Effective Date.

80. "**Impaired**" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

81. "**Insurance Policies**" means the Debtors' insurance policies and any agreements, documents or instruments relating thereto entered into prior to the Petition Date.

82. "**Installment Fees**" means $500,000 of the documented professional fees and expenses incurred by the Subordinated Agent as of the Effective Date exclusive of ACAS Effective Date Fees.

83. "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

84. "**Intercompany Interest**" means any Equity Interest in a Debtor held by another Debtor.

85. "**Intercreditor Agreement**" means that certain Intercreditor and Subordination Agreement, as amended and supplemented, among the Existing Agent, Subordinated Agent, and the Debtors.

86. "**Interest**" means, collectively, Equity Interests and Intercompany Interests.

87. "**IRS**" means Internal Revenue Service of the United States of America.

88. "**JSC**" means Jones Stephens Corp., an Alabama corporation, and the surviving corporation through a merger with D.A. Fehr, Inc.

89. "**LC Lender**" means Bank of Ireland as issuer of the Letter of Credit.

90. "**Lender/ACAS Term Sheet**" means the Term Sheet annexed hereto as Exhibit A.

91. "**Lender Common Stock**" means 50.25% of the New Common Stock, fully diluted after giving effect to options authorized to be granted under the Management Incentive Plan, to be distributed to Existing Lenders in accordance with the Plan on the Effective Date.

92. "**Lender Professional Fees**" means the documented professional fees and expenses incurred by the Existing Agent in connection with the Chapter 11 Cases as of the Effective Date.

93. "**Lender Secured Claims**" means all Claims of the Existing Agent and any Existing Lender under the Existing Credit Agreement or secured under the related security agreements, including without limitation, letters of credit and swap agreements.

94. "**Letter of Credit**" means the letter of credit issued or to be issued by the LC Lender as security for the Surety Bond.

95. "**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

96. "**Loan Compliance**" shall have the meaning set forth in Section 5.19 of the Plan.

97. "**Management Common Stock**" means up to an aggregate of 12.5% of the New Common Stock which shall be issuable upon receipt or exercise of awards issued pursuant to the Management Incentive Plan.

98. "**Management Fee**" means any and all fees payable under the New Management Agreement.

99. "**Management Incentive Plan**" means the management incentive plan of the Reorganized Debtors, which management incentive plan will be established and

implemented by the initial board of the Reorganized Debtors as soon as reasonably practicable after the Effective Date and pursuant to which options to purchase 12.5% of the New Common Stock of Reorganized Parent on a fully diluted basis at the option exercise price of $0.01 per share (or at such other price as shall not be less than the then-current fair market value of a share of common stock on the grant date of such options, such fair market value being determined by the board of directors of Reorganized Parent) shall be allocable and made available to certain key employees of the Reorganized JSC and shall become vested and exercisable in accordance with terms and conditions of the Management Incentive Plan which shall be filed as a Plan Supplement pursuant to and consistent with the terms set forth in the Post Effective Date Management Incentive Plan Term Sheet.

100. "**Maximum Leverage Amount**" shall mean as follows:

| Quarter Ending | Maximum Leverage Amount |
|---|---|
| December 31, 2010 | 8.0:1.0 |
| March 31, 2011 | 7.9:1.0 |
| June 30, 2011 | 7.8:1.0 |
| September 30, 2011 | 7.7:1.0 |
| December 31, 2011 | 7.6:1.0 |
| March 31, 2012 | 7.4:1.0 |
| June 30, 2012 | 7.2:1.0 |
| September 30, 2012 | 7.0:1.0 |
| December 31, 2012 | 6.8:1.0 |
| March 31, 2013 | 6.6:1.0 |
| June 30, 2013 | 6.4:1.0 |
| September 30, 2013 | 6.2:1.0 |
| December 31, 2013 and thereafter | 6.0:1.0 |

101. "**Necessary Lenders**" means those Existing Lenders that (i) comprise more than 50% in number of the Existing Lenders; and (ii) hold more than 66 2/3% in amount of the Lender Secured Claims.

102. "**Net Available Cash**" means all Cash On Hand <u>less</u> (i) One Million Dollars ($1,000,000), (ii) the Tax Refund to the extent received prior to the Effective Date, (iii) the Plan Distribution Amount, (iv) the New Facility Fee Amount, and (v) an amount equal to the Plan Related Fees.

103. "**New Bylaws**" means the new bylaws for each of the Reorganized Debtors.

104. "**New Certificates of Incorporation**" means the new Certificate of Incorporation for each of the Reorganized Debtors.

105. "**New Common Stock**" means the shares of new common stock of Reorganized Parent issued pursuant to the Plan, which new common stock (a) shall be comprised of (i) Subordinated Noteholder Common Stock which shall be issuable to Subordinated Noteholders, (ii) Lender Common Stock which shall be issuable to Existing Lenders, (iii) Cortec Common Stock which shall be issuable to Cortec, and (iv) Management Common Stock which shall be issuable upon receipt or exercise of awards issued pursuant to the Management Incentive Plan, and (b) shall constitute a single class of common stock having the rights, privileges and limitations as set forth in the New Parent Certificate of Incorporation.

106. "**New Equity Holders**" means the Holders of the New Common Stock.

107. "**New Facility Fee Amount**" means an amount equal to any and all fees payable to the Agent or Revolving Lender on the Effective Date under the Amended and Restated Credit Documents.

108. "**New JSC Bylaws**" means the bylaws of Reorganized JSC, which shall be substantially in the form set forth in a Plan Supplement.

109. "**New JSC Certificate of Incorporation**" means the certificate of incorporation of Reorganized JSC, which shall be substantially in the form set forth in a Plan Supplement.

110. "**New Management Agreement**" means the management agreement by and between ACAS and the Reorganized Parent on terms consistent with Section 5.19 of the Plan which shall be filed as a Plan Supplement.

111. "**New Plan Securities**" means (i) the New Common Stock, (ii) the New Subsidiary Stock, and (iii) the New Preferred Stock.

112. "**New Parent Bylaws**" means the bylaws of Reorganized Parent, which shall be substantially in the form set forth in a Plan Supplement.

113. "**New Parent Certificate of Incorporation**" means the certificate of incorporation of Reorganized Parent, which shall be substantially in the form set forth in a Plan Supplement.

114. "**New Preferred Stock**" means $17.5 million of preferred stock in the Reorganized Parent all on terms, conditions and voting rights pursuant to and consistent with those set forth in the Lender/ACAS Term Sheet and Annex B thereto, and as more fully set forth in the New Parent Certificate of Incorporation.

115. "**New Stockholders' Agreement**" means the stockholders' agreement substantially in the form included in the Plan Supplement, governing the sale, disposition and treatment of the New Plan Securities and other rights and obligations of the Holders of New Plan Securities.

FP01/ 6376935.8

116. "**New Subsidiary Stock**" means the new common stock of Reorganized JSC issued to Reorganized Parent pursuant to the Plan.

117. "**Notice of Intent to Assume or Reject**" means the notice sent by the Debtors pursuant to Article 7 of the Plan notifying counter-parties to executory contracts or unexpired leases of the Debtors intention to assume or reject such executory contracts or unexpired leases, the proposed Assumption Effective Date or Rejection Effective Date, as applicable, and, if applicable, a Proposed Cure Amount and/or a proposed assignment.

118. "**Other Secured Claim**" means any Secured Claim (including any Secured Claim for taxes due and owing by the Debtors), other than a Lender Secured Claim or a Subordinated Noteholder Claim.

119. "**Parent**" means Plumbing Holdings Corporation, a Delaware corporation.

120. "**Person**" or "**person**" means a person as defined in section 101(41) of the Bankruptcy Code.

121. "**Petition Date**" means December 15, 2009, the date on which the Debtors commenced the Chapter 11 Cases.

122. "**Plan**" means this Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, including all Plan Supplements and all exhibits, supplements, appendices and schedules to any of the foregoing, as any of them may be amended or modified from time to time hereunder or in accordance with applicable law.

123. "**Plan Distribution Account**" means a segregated account to be established and administered by the Reorganized Debtors containing funds deposited from the Debtors' Cash On Hand on the Effective Date in an amount equal to the Plan Distribution Amount.

124. "**Plan Distribution Amount**" means an amount equal to the aggregate amount of all asserted and unpaid Administrative Claims (including all incurred and unpaid Professional Fee Claims), Priority Tax Claims, Cure Claims, Priority Claims, and up to $1,500,000 in General Unsecured Claims (whether or not subject to dispute, but excluding Disallowed Claims).

125. "**Plan Documents**" means (i) Confirmation Order, (ii) Amended and Restated Credit Agreement, (iii) New Management Agreement, (iv) New Stockholders' Agreement, (v) New Bylaws, (vi) New Certificates of Incorporation, and (vii) Management Incentive Plan. The Plan Documents (with the exception of the New Stockholders' Agreement) shall each be in a form reasonably acceptable to the Plan Document Parties, other than Cortec, each in its sole discretion, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any

person, provided, however, that (i) the New Stockholders' Agreement shall be in a form reasonably acceptable to the Plan Document Parties and (ii) any documentation or matter consistent with a term specifically addressed in the Lender/ACAS Term Sheet and the Amended and Restated Credit Facility Term Sheet shall be deemed acceptable to the Plan Document Parties.

126. "**Plan Document Parties**" means (a) the Debtors, (b) the Reorganized Debtors, (c) ACAS, (d) Cortec, (e) the Existing Agent, (f) the Necessary Lenders, (g) the Revolving Lender and LC Lender, and (h) Agent.

127. "**Plan Related Fees**" means (i) the Lender Professional Fees, (ii) the Cortec Professional Fees, and (iii) the ACAS Effective Date Fees.

128. "**Plan Supplement**" means, collectively, the documents, agreements, instruments, schedules and exhibits and forms thereof to be filed as a Plan Supplement, as each such document, agreement, instrument, schedule and exhibit and form thereof may be altered, restated, modified or replaced from time to time, including subsequent to the filing of any such documents. Subsequent to their initial filing pursuant to the Plan, the Debtors shall, unless otherwise provided under the Plan, be free to make non-material modifications to any such documents without further filings or notice to any party. Each such document, agreement, instrument, schedule or exhibit or form thereof is referred to herein as a "Plan Supplement." The Debtors shall file the Plan Supplements on or before a date that is ten (10) days prior to the Confirmation Hearing or such other date as determined by the Bankruptcy Court.

129. "**Plan Voting Deadline**" means the deadline established by the Bankruptcy Court for voting on the Plan.

130. "**Post Effective Date Management Incentive Plan Term Sheet**" means the Post Effective Date Management Incentive Plan Term Sheet as set forth in Annex C to the Lender/ACAS Term Sheet.

131. "**Priority Tax Claim**" means an unsecured Claim of a governmental unit entitled to priority pursuant to section 507(a)(8) or specified under section 502(i) of the Bankruptcy Code.

132. "**Professional**" means any professional (a) employed in the Chapter 11 Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code or (b) seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

133. "**Professional Fee Claims**" means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

134. "**Priority Claim**" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code.

135. "**Proof of Claim**" means a proof of claim or interest filed by a Holder of a Claim or Interest in accordance with the Bar Date Order.

136. "**Proposed Cure Amount**" means, with respect to a particular executory contract or unexpired lease, the consideration that the Debtors propose (which may be zero or some amount greater than zero) on the Notice of Intent to Assume or Reject sent to Assumption Parties and included herein as a Plan Supplement as Schedule 7.01 to the Plan, in each case as full satisfaction of the Debtors' obligations with respect to such executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code.

137. "**Pro Rata Share**" means the ratio (expressed as a percentage) of the amount of an Interest or Claim in a group to the aggregate amount of all Interests or Claims in the same group.

138. "**Rejection Bar Date**" means the deadline for filing Proofs of Claim arising from the rejection of an executory contract or unexpired lease, which deadline shall be 30 calendar days after the entry of an order (including, without limitation, the Confirmation Order) approving the rejection of such executory contract or unexpired lease (or such other deadline set forth in such order).

139. "**Rejection Claim**" means a Claim under section 502(g) of the Bankruptcy Code.

140. "**Rejection Effective Date**" means the date upon which the rejection of an executory contract or unexpired lease under this Plan is deemed effective, which shall not be later than 60 calendar days after the Effective Date unless otherwise agreed by the applicable Rejection Party.

141. "**Rejection Party**" means a counterparty to an executory contract or unexpired lease to be rejected by the Debtors under this Plan.

142. "**Release Opt-Out**" means the item set forth in the Ballots pursuant to which Holders of Claims in the voting Class may opt out of the release set forth in Section 10.03 hereof.

143. "**Releasing Parties**" means all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to the Plan.

144. "**Released Party**" means each of: (a) the Plan Document Parties; (b) the Existing Lenders; (c) the Subordinated Noteholders; (d) the Committee; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entities' subsidiaries, affiliates, managed accounts or funds, officers, directors, principals,

employees, partners, members, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives (including their respective officers, directors, members, employees and professionals of the respective Entities in clause (e) herein), and other professionals; and (f) in each case in their capacity as such and only if serving in such capacity, the Debtors' and the Reorganized Debtors' officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, serving in such capacity on the business day immediately preceding the Effective Date.

145. "**Reorganized Debtors**" means, collectively, each of the Debtors on and after the Effective Date.

146. "**Reorganized JSC**" means JSC on and after the Effective Date.

147. "**Reorganized Parent**" means Parent on and after the Effective Date.

148. "**Reserve Fund**" means the reserve established and maintained by the Disbursing Agent, in (a) the amount of Cash or other property that the Disbursing Agent is required to distribute on or after the Effective Date to Holders of Allowed Claims to the extent such Allowed Claims are not paid in full or checks distributed on account of such Allowed Claims are not negotiated and cleared on the Effective Date, pending the occurrence of such payments and clearance, plus, (b) the amount of Cash or other property that the Disbursing Agent would be required to distribute on or after the Effective Date to Holders of Disputed Claims and Contingent Claims, if such Claims were undisputed or noncontingent Claims on the Effective Date, pending the allowance of such Claims, the estimation of such Claims for purposes of allowance, or the realization of the contingencies, plus (c) the amount of Cash or other property that the Disbursing Agent would be required to distribute on or after the Effective Date to Holders of Unliquidated Claims, if such Claims were liquidated, such amount to be estimated by the Bankruptcy Court or agreed upon by the Debtors or Reorganized Debtors, as the case may be, and the Holders thereof as sufficient to satisfy such Unliquidated Claim upon such Claim's allowance, estimation for purposes of allowance, or liquidation, pending the occurrence of such estimation or liquidation, plus (d) the amount of cash that the Disbursing Agent would be required to distribute to Holders of Professional Fee Claims.

149. "**Revolving Lender**" means Bank of Ireland.

150. "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements have been or may be supplemented, modified or amended from time to time.

151. "**Secured Claim**" means a Claim that is secured by a security interest in or lien upon property, or the proceeds of the sale of such property, in which the Debtors have an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of such interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors or Reorganized Debtors and the Holder of such Claim.

152. "**Securities Act**" means the Securities Act of 1933, as amended.

153. "**Solicitation Agent**" means The Garden City Group, Inc.

154. "**Subordinated Agent**" means ACAS (as successor by merger to American Capital Financial Services, Inc.), as agent to the Subordinated Noteholders under the Subordinated Note Purchase Agreement.

155. "**Subordinated Noteholders**" means the Holders of Subordinated Noteholder Claims against the Debtors under the Subordinated Note Purchase Agreement.

156. "**Subordinated Noteholder Claims**" means the Claims held by the Subordinated Agent and the Subordinated Noteholders, inclusive of accrued and unpaid principal and interest, fees, expenses and other obligations and charges under the Subordinated Note Purchase Agreement that are secured by a second priority security interest in the equity of JSC.

157. "**Subordinated Noteholder Common Stock**" means 34.25% of the New Common Stock, fully diluted after giving effect to options authorized to be granted under the Management Incentive Plan, to be distributed to Subordinated Noteholders in accordance with the Plan on the Effective Date.

158. "**Subordinated Note Purchase Agreement**" means that certain Note Purchase Agreement dated as of September 7, 2006 (as amended from time to time) among the Debtors, the Subordinated Agent and Subordinated Noteholders.

159. "**Subsidiary Equity Interests**" means the Equity Interest held by the Parent in JSC.

160. "**Surety Bond**" means the continuous surety bond posted in favor of the United States Department of Homeland Security, U.S. Customs and Border Protection.

161. "**Tax Refund**" means that certain federal loss-carry back tax refund anticipated to be received from the Internal Revenue Service from applying the Debtors' 2009 excess tax losses to the fiscal year ending December 31, 2005.

162. "**Treatment Objection**" means an objection to the Debtors' proposed assumption or rejection of an executory contract or unexpired lease pursuant to the provisions of this Plan (including an objection to the proposed Assumption Effective Date or

Rejection Effective Date, the Proposed Cure Amount and/or any proposed assignment, but not including an objection to any Rejection Claim) that is timely filed with the Bankruptcy Court.

163. "**Trigger Event**" shall mean any of the following: (a) if EBITDA (twelve month trailing tested on a quarterly basis) for each quarterly period through December 31, 2011 is less than 75% of projected EBITDA included in the base case used for setting financial covenant levels in the Amended and Restated Credit Agreement, (b) if the leverage ratio (tested on a quarterly basis) is greater than the Maximum Leverage Amount or (c) any event of default under the Amended and Restated Credit Agreement arising from a principal or interest payment default. For this purpose, EBITDA for a specific quarter will be defined to include mutually acceptable add-backs, including for restructuring charges and other non-recurring events and common equity investments made by ACAS within 10 business days of a Trigger Event being reported by the Reorganized Parent in its quarterly compliance certificate for such quarter provided that such equity investment is at least $5 million and is used to pay the obligations under the Amended and Restated Credit Agreement.

Notwithstanding anything to the contrary contained in his Plan, in the event of the conversion of any New Preferred Stock into debt, the associated increase in indebtedness and interest expense of the Reorganized Debts shall be disregarded for purposes of calculating whether a Trigger Event has occurred.

164. "**Trigger Notice**" means the written notice (including pdf signatures circulated by electronic mail) of the occurrence of a Trigger Event and the exercise of springing Board rights in respect thereof signed by Existing Lenders and/or their successors and assignees who hold a majority of the combined voting power of the New Preferred Stock and Lender Common Stock issued to Existing Lenders pursuant to the Plan and delivered within 180 days of a Trigger Event.

165. "**Unimpaired**" refers to any Claim or Interest that is not Impaired.

166. "**United States Trustee**" means the United States Trustee for the District of Delaware.

167. "**Unliquidated Claim**" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is sought to be estimated.

168. "**Unpaid Management Fee Claims**" means all Claims relating to or arising out of the Existing Management Agreement (inclusive of accrued and unpaid fees, expenses and other obligations) held by Cortec, including without limitation any Claims arising out of the rejection of the Existing Management Agreement.

169. "**Voting Deadline**" means the date established by the Approval Order by which the Solicitation Agent must actually receive a valid Ballot properly voting on the Plan in order for such vote to count as a vote to accept or reject the Plan. Such deadline is 4:00 p.m. (prevailing Eastern Time) on December 15, 2010.

170. "**Voting Instructions**" means the instructions for voting on the Plan contained in the Approval Order, Article 7 of the Disclosure Statement and the Ballots.

171. "**Voting Record Date**" means the record date for voting on the Plan, which shall be November 12, 2010.

172. "**Workers' Compensation Plan**" means each of the Debtors' written contracts, agreements, agreements of indemnity, qualified self-insurance workers' compensation bonds, policies, programs and plans for workers' compensation and workers' compensation insurance entered into prior to the Petition Date.

**Section 1.03    Rules of Interpretation**

    **(a)    General**

For purposes of the Plan (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (ii) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (iii) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (iv) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan, (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (vi) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

    **(b)    Rule of "Contra Proferentum" Not Applicable**

This Plan is the product of extensive negotiations between and among, *inter alia*, the Plan Document Parties. Each of the foregoing was represented by independent counsel of their choice who either (i) participated in the formulation and documentation of or (ii) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto. Accordingly, unless explicitly stated otherwise, the general rule of contract construction known as "*contra proferentum*" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, or any exhibit, schedule, contract, instrument, release, or other document generated in connection therewith.

**Section 1.04    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**Section 1.05    Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to legal currency of the United States of America, unless otherwise expressly provided.

**Section 1.06    Reference to Debtors or Reorganized Debtors**

Unless specifically provided otherwise in the Plan, references to the Debtors or Reorganized Debtors shall mean the Debtors and/or Reorganized Debtors, as the context may require.

**Section 1.07    Exhibits; Schedules; Plan Supplements**

All exhibits and schedules to the Plan, including Plan Supplements, are incorporated into and are a part of the Plan as if set forth in full herein.  Copies of such exhibits, schedules and Plan Supplements can be obtained by downloading such documents from the Bankruptcy Court's website at www.deb.uscourts.gov.  To the extent any exhibit, schedule or Plan Supplement (other than a Plan Document) is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit, non-schedule or non-Plan Supplement portion of the Plan shall control.

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

**Section 2.01    Treatment of Administrative Claims**

**(a)    Administrative Claims**

Except as otherwise provided for herein, and subject to the requirements of this Plan, on, or as reasonably practicable after the later of (i) the Effective Date or (ii) the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full settlement, satisfaction, release and discharge of and in exchange for such Allowed Administrative Claim (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as to which the Debtors, Reorganized Debtors and such Holder shall have agreed to in writing; provided however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-

barred by prior orders of the Bankruptcy Court, all Administrative Claims required to be filed and not filed by the Administrative Claim Bar Date shall be deemed disallowed and discharged, exclusive of claims arising under 28 U.S.C. §1930, for which a claim need not be filed. Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

**(b)     Professional Fee Claims**

Each Holder of a Professional Fee Claim shall be treated as set forth in Section 14.01(d) herein.

**Section 2.02    Treatment of Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, in full satisfaction, settlement, release, extinguishment and discharge of such Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed and (iii) a date agreed to by the Debtors, as the case may be, and the Holder of such Priority Tax Claim; (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Debtors or the Purchaser, as the case may be, or as the Bankruptcy Court may order; or (c) otherwise left unimpaired.

# ARTICLE 3
# CLASSIFICATION AND TREATMENT OF OTHER CLAIMS AND INTERESTS

**Section 3.01    Summary**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The Classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Lender Secured Claims (Class 2A-Lender Secured Claims against Parent; | Impaired | Entitled to Vote |

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
|  | Class 2B-Lender Secured Claims against JSC |  |  |
| 3 | Subordinated Noteholder Claims (Class 3A- Subordinated Noteholder Claims against Parent; Class 3B- Subordinated Noteholder Claims against JSC) | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | General Unsecured Claims against JSC | Impaired | Entitled to Vote |
| 6 | Unpaid Management Fee Claims | Impaired | Entitled to Vote |
| 7 | Subsidiary Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**Section 3.02     Voting; Presumptions**

(a)     **Acceptance by Impaired Classes**

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

(b)     **Voting Presumptions**

Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.  Claims and Interests in Impaired Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan**.**

**Section 3.03    Unimpaired Classes**

**(a)    Priority Claims (Class 1)**

Each Holder of an Allowed Priority Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Allowed Priority Claim, at the option of the Reorganized Debtors and with the consent of the Existing Agent which consent shall not be unreasonably withheld:  (a) the amount of such unpaid Allowed Priority Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Claim becomes Allowed, and (iii) the date such claim becomes due and payable in the ordinary course of business; (b) in Cash on such other terms and conditions as may be agreed between the Holder of each such Allowed Priority Claim and the Reorganized Debtors; or (c) in deferred Cash payments, to the extent permissible under the Bankruptcy Code.

**(b)    Other Secured Claims (Class 4)**

To the extent there are any Allowed Other Secured Claims against property that is property of the Debtors, at the option of the Reorganized Debtors and with the consent of the Existing Agent which consent shall not be unreasonably withheld, each Holder of an Allowed Other Secured Claim shall receive, either (i) the legal, equitable and contractual rights to which such Allowed Other Secured Claim entitles the Holder thereof shall be left unaltered; (ii) the Other Secured Claim shall be left unimpaired in the manner described in section 1124(2) of the Bankruptcy Code; or (iii) the Holder of such Claim shall receive or retain the collateral securing such Other Secured Claim.

**Section 3.04    Impaired Classes of Claims**

**(a)    Lender Secured Claims (Class 2: Class 2A-Lender Secured Claims against Parent and Class 2B-Lender Secured Claims against JSC)**

On the Effective Date, each Holder of a Lender Secured Claim shall receive, in full and final satisfaction of the Lender Secured Claim its Pro Rata Share (according to the respective amount of the Lender Secured Claims held by each Existing Lender) of (a) Cash in the amount of the Net Available Cash; (b) the Amended and Restated Term Loan Facility; (c) the New Preferred Stock; and (d) the Lender Common Stock.  The Debtors shall pay the Lender Professional Fees in accordance with Section 5.21 of the Plan.

In addition, from time to time in the Reorganized Debtors' discretion, all Cash in the Plan Distribution Account in excess of the Reserve Fund and after payment of all Plan Related Fees, shall be remitted to the Agent, in each case on behalf of, and for distribution to, Existing Lenders in accordance with each Existing Lenders' Pro Rata Share (according to the respective amount of the Lender Claims held by each Existing Lender).  As soon as practicable after the payment of all Plan Related Fees, Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed General Unsecured Claims, all remaining Cash in the Plan Distribution Account shall be remitted to the Agent on behalf of, and for distribution to Existing Lenders, in accordance with each Existing Lender's Pro Rata Share

(according to the respective amount of the Lender Claims held by each Existing Lender).  The post-Effective Date distributions, if any, from the Plan Distribution Account to the Agent on behalf of the Existing Lenders shall be considered distributions under the Plan and shall not be applied to the obligations arising out of the Amended and Restated Credit Facility or the New Preferred Stock.

**(b)** **Subordinated Noteholder Claims (Class 3: Class 3A- Subordinated Noteholder Claims against Parent and Class 3B- Subordinated Noteholder Claims against JSC)**

The Subordinated Noteholder Claims shall be deemed Allowed under the Second Amended Plan.  On the Effective Date, each Holder of an Allowed Subordinated Noteholder Claim shall receive, in full and final satisfaction of such Subordinated Noteholder Claim, its Pro Rata Share of the Subordinated Noteholder Common Stock.  The Debtors shall pay the ACAS Professional Fees in accordance with Section 5.21 of the Plan.

**(c)** **General Unsecured Claims against JSC (Class 5)**

On or as soon as reasonably practicable after the later of (a) the Effective Date, or (b) the date on which such General Unsecured Claim becomes Allowed, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such General Unsecured Claim, the amount of such unpaid Allowed General Unsecured Claim in Cash; provided, however, that in the event that the total amount of all Allowed General Unsecured Claims exceeds One Million Five Hundred Thousand Dollars ($1,500,000), each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of One Million Five Hundred Thousand Dollars ($1,500,000) in Cash.

**(d)** **Unpaid Management Fee Claims (Class 6)**

The Unpaid Management Fee Claims shall be deemed Allowed under the Second Amended Plan.  On the Effective Date, Cortec shall receive, in full and final satisfaction of such Unpaid Management Fee Claims, the Cortec Common Stock.  The Debtors shall pay the Cortec Professional Fees in accordance with Section 5.21 of the Plan.

**(e)** **Subsidiary Equity Interests (Class 7)**

No property will be distributed on account of Class 7 Subsidiary Equity Interests.  All Subsidiary Equity Interests shall be deemed cancelled and extinguished on the Effective Date.

**(f)** **Equity Interests (Class 8)**

No property will be distributed to or retained by Holders of Class 8 Equity Interests in Parent and such Equity Interests shall be deemed cancelled and extinguished on the Effective Date.

**Section 3.05   Compliance with Laws and Effects on Distributions**

In connection with the consummation of the Plan, the Reorganized Debtors and Disbursing Agent will comply with all withholding and reporting requirements imposed by federal, state, local or foreign taxing authorities, and all distributions hereunder, whether in Cash, stock or other property, will be subject to applicable withholding and reporting requirements.

**Section 3.06   Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoff or recoupments against Unimpaired Claims.

**Section 3.07   Cram Down**

If any Class of Claims or Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with the terms of this Plan.  With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**ARTICLE 4**
**ACCEPTANCE REQUIREMENTS**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the applicable Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of Allowed Claims in such Class actually voting have voted to accept the applicable Plan.

**Section 4.01   Acceptance or Rejection of this Plan**

    **(a)      Voting Classes**

Classes 2, 3, 5 and 6 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

    **(b)      Presumed Acceptance of this Plan**

Classes 1and 4 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

    **(c)      Presumed Rejection of this Plan**

Classes 7 and 8 are Impaired and shall receive no distribution under the Plan and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**Section 4.02   Confirmation of this Plan Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by an Impaired Class. The Debtors request Confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept this Plan pursuant to section 1126(c) of the Bankruptcy Code. The Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**Section 4.03   Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

**ARTICLE 5**
**MEANS FOR IMPLEMENTATION OF PLAN**

**Section 5.01   Amended and Restated Credit Documents**

On the Effective Date, the Reorganized Debtors are authorized to execute and deliver the Amended and Restated Credit Documents, the terms, conditions and covenants which shall be acceptable to the Plan Document Parties, each in its sole discretion, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any person, provided, that any documentation or matter consistent with a term specifically addressed in the Lender/ACAS Term Sheet and the Amended and Restated Credit Facility Term Sheet shall be deemed acceptable to the Plan Document Parties.  Moreover, each Holder of a Lender Secured Claim shall be required to execute and be bound by the Amended and Restated Credit Documents as a condition precedent to such Existing Lenders' participation in the Amended and Restated Term Loan Facility.

**Section 5.02   New Equity Holders**

In consideration of the Allowed Lender Secured Claims, Existing Lenders shall receive (i) 100% of the outstanding shares of the Lender Common Stock (representing 50.25% of the New Common Stock, fully diluted after giving effect to options granted under the Management Incentive Plan), and (b) 100% of the outstanding shares of New Preferred Stock.  One or more of the Existing Lenders may choose to hold the New Preferred Stock and Lender Common Stock through a newly-formed limited liability company or other pass-through entity subject to the terms of the Plan and provided that the limited liability company or other applicable agreement will subject the holders to effectively the same restrictions and rights as is contemplated by the New Stockholders' Agreement for the benefit of the New Equity Holders.  On the Effective Date, in consideration of the Allowed Subordinated Noteholders Claims, Subordinated

- 27 -

Noteholders shall receive 100% of the outstanding shares of Subordinated Noteholder Common Stock (representing 34.25% of the New Common Stock, fully diluted after giving effect to options granted under the Management Incentive Plan). On the Effective Date, in consideration of the Allowed Unpaid Management Fee Claims, Cortec shall receive 100% of the outstanding shares of Cortec Common Stock (representing 3% of the New Common Stock, fully diluted after giving effect to options granted under the Management Incentive Plan). On the Effective Date, the Reorganized Parent shall receive 100% of the new equity in the Reorganized JSC.

### Section 5.03  Sources of Cash for Plan Distributions and Transfers of Funds Among Debtors

All consideration necessary for the Reorganized Debtors to make payments or distributions pursuant hereto shall be obtained from Cash On Hand and Cash from business operations. Further, the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.

### Section 5.04  Issuance of New Plan Securities

The issuance of the New Plan Securities, or other equity awards reserved for the Management Incentive Plan, by the Reorganized Debtors is authorized without the need for any further corporate action or, except as required by the Plan, Confirmation Order or Management Incentive Plan, without any further action by a Holder of Claims or Interests. On the Effective Date, the New Plan Securities shall be duly authorized and issued as provided for by the Plan and the Plan Documents. All of the shares of New Plan Securities shall be duly authorized, validly issued and fully paid and non-assessable. Each distribution and issuance referred to in the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

### Section 5.05  New Stockholders' Agreement

Upon the Effective Date, the New Stockholders' Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms. The New Stockholders' Agreement shall contain provisions governing the rights of Holders of New Plan Securities, including, without limitation, access to information regarding the Reorganized Debtors and certain transfer restrictions (subject to customary restrictions) such as drag-along and tag-along rights, a right of first refusal, preemptive rights and limits on the number of record holders. Moreover, each Holder of an Allowed Claim receiving such New Plan Securities shall be required to execute and be bound by the New Stockholders' Agreement as a condition precedent to receiving its allocation of New Plan Securities.

**Section 5.06    Listing of New Stock and Transfer Restrictions**

The Reorganized Debtors shall not be obligated, and do not intend, to list the New Plan Securities on a national securities exchange. In order to ensure that the Reorganized Debtors will not become subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, the New Certificate of Incorporation and the New Stockholders' Agreement may impose certain trading restrictions to limit the number of record holders thereof.  The New Plan Securities will be subject to certain transfer and other restrictions as and to the extent provided in the New Stockholders' Agreement.

**Section 5.07    Cancellation of Securities and Agreements**

On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the obligations of the Debtors, Existing Agent, Existing Lenders, Subordinated Agent, Subordinated Noteholders and Cortec under the Existing Credit Agreement, Subordinated Note Purchase Agreement, Existing Management Agreement, Intercreditor Agreement and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan), shall be cancelled, and neither the parties thereunder nor the Reorganized Debtors shall have any continuing obligations thereunder; (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; and (c) the obligations of the Existing Agent and the Existing Lenders to the Debtors under the Existing Credit Agreement shall be cancelled as to the Existing Agent and Existing Lenders, and the Existing Agent and the Existing Lenders shall not have any continuing obligations to the Debtors or the Reorganized Debtors thereunder; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan as provided in the Plan.

**Section 5.08    Securities Exemption**

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any New Plan Securities contemplated by the Plan and all agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution, or sale of securities. In addition, under section 1145 of the Bankruptcy Code, any New Plan Securities contemplated by the Plan and any and all agreements incorporated therein will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11)

of the Securities Act; (b) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (c) the restrictions on the transferability of such securities and instruments, including those set forth in the Plan, New Stockholders' Agreement and the New Certificates of Incorporation; and (d) applicable regulatory approval.

### Section 5.9   Continued Corporate Existence

Following the Effective Date, the Reorganized Debtors shall continue to exist as separate corporate entities in accordance with applicable non-bankruptcy law and pursuant to their corporate documents in effect prior to the Effective Date, except to the extent that such corporate documents are amended by the terms of this Plan.

### Section 5.10   New Certificates of Incorporation and New Bylaws

On or immediately before the Effective Date, the Reorganized Debtors will file their respective New Certificates of Incorporation with the applicable Secretaries of State and/or other applicable authorities in their respective states of incorporation in accordance with the corporate laws of the respective states of incorporation, and upon such filing such New Certificates of Incorporation shall be authorized, adopted and approved by and on behalf of each respective Reorganized Debtor.  On the Effective Date, the New Bylaws shall be deemed to be authorized, adopted and approved as and for the bylaws of each respective Reorganized Debtor.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Certificates of Incorporation and New Bylaws and other constituent documents as permitted by the laws of their respective states of incorporation and their respective New Certificates of Incorporation and New Bylaws.

### Section 5.11   Other General Corporate Matters

On or after the Effective Date, the Debtors and/or Reorganized Debtors shall be authorized to take and will take such action as is necessary under the laws of the State of Delaware, State of Alabama, federal law and other applicable law to effect the terms and provisions of the Plan.  Without limiting the foregoing, the authorization, adoption, and, if applicable, filing of the New Certificates of Incorporation, the New Bylaws, the issuance of the New Plan Securities, the election and appointment of directors or officers, the adoption and implementation of the Management Incentive Plan, and any other matter involving the corporate structure of the Reorganized Debtors, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to section 303 of the Delaware General Corporation Law (or the laws of each state pursuant to which a Reorganized Debtor is organized) without requiring any further action by the shareholders or directors of the Debtors and/or Reorganized Debtors.

### Section 5.12   Directors And Officers

Except as expressly provided in this Plan and the New Certificates of Incorporation and New Bylaws of the Reorganized Debtors (as amended from time to time), the operation,

management and control of the Reorganized Debtors shall be the general responsibility of its board of directors and senior officers. The boards of directors of the Reorganized Debtors shall consist of no more than 5 directors. Holders of a majority of the New Preferred Stock will have the right to nominate and elect 1 "A" director so long as there is at least $5 million of New Preferred Stock issued and outstanding and the Holders of a majority of the Lender Common Stock (if the Existing Lenders or their affiliates then own at least 25% of the Lender Common Stock issued under the Plan) will have the right to nominate and elect 1 "A" director (provided that such Holders will have the right to nominate and elect 2 "A" directors at such time as there is less than $5 million of New Preferred Stock issued and outstanding); provided, however, that if Existing Lenders own less than 25%, but at least 10% of the Lender Common Stock issued under the Plan, such Existing Lenders shall retain the right to designate one board observer. ACAS will have the right to nominate and elect 2 "B" directors so long as ACAS and its affiliates own at least 25% of the Subordinated Noteholder Common Stock issued under the Plan (and ACAS shall retain observation rights on the boards of directors of the Reorganized Debtors so long as ACAS and its affiliates owns less than 25%, but at least 10% of the Subordinated Noteholder Common Stock issued under the Plan). The President of the Reorganized Parent shall serve as a "C" director. So long as there are any "A" directors, all Board committees of the Reorganized Debtors shall include at least one "A" director, and so long as there are any "B" directors, all Board committees of the Reorganized Debtors shall include at least one "B" director. Until delivery of a Trigger Notice, "A" directors and "C" directors will have 1 vote and "B" directors will have 3 votes on all matters which come before the Board of each of the Reorganized Debtors. Following delivery of a Trigger Notice, "B" directors and "C" directors will have 1 vote and "A" directors will have 3 votes on all matters which come before the Board of each of the Reorganized Debtors.

The existing senior officers of the Debtors shall continue to serve in their same respective capacities after the Effective Date for the Reorganized Debtors, unless and until replaced or removed in accordance with the New Certificates of Incorporation and the New Bylaws. Management electing to remain with the Reorganized Debtors will be entitled to participate in the Management Incentive Plan.

## Section 5.13    Management Incentive Plan

On or soon as practical after the Effective Date, the board of directors of the Reorganized Parent and the New Equity Holders of the Reorganized Parent will adopt and implement the Management Incentive Plan, which will allow the Reorganized Parent to grant options to purchase shares of New Common Stock on such terms as shall be approved by the board of directors of the Reorganized Parent. The board of directors of the Reorganized Parent shall have the authority to reserve 12.5% of the Reorganized Parent's New Common Stock for issuance pursuant to options granted under the Management Incentive Plan and upon such issuance such shares of common stock shall be validly issued, fully paid and nonassessable by the Reorganized Parent. In connection with the adoption of the Management Incentive Plan, granting of options thereunder, and the issuance of shares of common stock upon exercise of such options, the Reorganized Debtors may take whatever actions are necessary to comply with applicable federal, state, local and international tax withholding and other obligations.

**Section 5.14    Employee Incentive Plan**

As soon as practical after the Effective Date, the board of the Reorganized JSC will adopt and implement the Employee Incentive Plan, which will provide for discretionary cash bonuses to be paid to employees of the Reorganized JSC if EBITDA for the year ending 2010 is equal to or greater than $7,000,000.

**Section 5.15    Revesting Of Assets in Reorganized Debtors**

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens granted pursuant to the Amended and Restated Credit Documents).

On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Without limiting the generality of the foregoing, the Debtors may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

**Section 5.16    Waiver Of Avoidance Actions and Excluded Claims; Preservation of Causes of Action**

Except as otherwise provided in the Plan or Confirmation Order or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, on the Effective Date, the Debtors and Reorganized Debtors shall waive all of their respective rights and interest in Avoidance Actions and Excluded Claims that they may hold. This waiver does not include Causes of Action other than the Avoidance Actions and Excluded Claims.

Except for Excluded Claims and Avoidance Actions and except to the extent such rights, Claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code:  (1) any and all rights, Claims, causes of action, defenses, and counterclaims of or accruing to the Debtors or their Estates shall remain assets of and vest in the Reorganized Debtors, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) neither the Debtors nor the Reorganized Debtors waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from

asserting) any right, Claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, Claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such right, Claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.

Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, *res judicata*, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtors' right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that the Debtors or the Reorganized Debtors have, or may have, as of the Effective Date. The Reorganized Debtors may commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action (other than Avoidance Actions and Excluded Claims), defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtors.

## Section 5.17   Employee and Retiree Benefits

On and after the Effective Date, the Reorganized Debtors shall honor, in the ordinary course of business, any unrejected contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or order entered by the Bankruptcy Court approving a pleading seeking payment of, for, among other things, compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time, and any other benefit plan; provided, however, that the Debtors' or Reorganized Debtors' performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, any causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

## Section 5.18   Workers' Compensation Programs

As of the Effective Date, the Reorganized Debtors shall continue to honor their post-petition obligations under: (i) all applicable workers' compensation laws in the states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements

of indemnity, self-insurer workers' compensation bonds, policies, programs and plans for workers' compensation and workers' compensation insurance in effect for the current policy year. Nothing in the Plan shall limit, diminish or otherwise alter the Debtors' or Reorganized Debtors' defenses, claims, rights of action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans; provided, however, that nothing in the Plan shall be deemed to impose any obligations on the Debtors or Reorganized Debtors in addition to what is required under the provisions of applicable law.

## Section 5.19    New Management Agreement

On the Effective Date, the Reorganized Parent and ACAS shall enter into the New Management Agreement on terms substantially similar to those set forth in the Existing Management Agreement, provided, however, the annual amount of the Management Fee shall be as follows: (i) $250,000 in calendar year 2010, pro rata from the Effective Date through the end of calendar year 2010, (ii) for each year thereafter, (A) $250,000 if EBITDA for the twelve month period ending on the last day of the prior calendar year is less than $9,000,000, (B) $375,000 if EBITDA for the twelve month period ending on the last day of the prior calendar year is greater than or equal $9,000,000, but less than $9,500,000, and (C) $500,000 if EBITDA for the twelve month period ending on the last day of the prior calendar year is greater than or equal to $9,500,000. The payment of Management Fees shall be subject to the fixed charge coverage ratio not falling below 1.10x after giving effect to such payment and that both before and after giving effect to such payment no default or event of default shall exist or result therefrom under the Amended and Restated Credit Agreement ("Loan Compliance"); provided, however, that any amount not paid at that time shall accrue and be paid either upon Loan Compliance, or the payment in full of all obligations due under the Amended and Restated Credit Facility and the New Preferred Stock. All Management Fees shall be paid in cash on a quarterly basis in an amount equal to $1/4^{th}$ of the applicable amounts set forth above. In addition, ACAS shall be paid a bonus in the amount of $500,000 the first time EBITDA exceeds $11,000,000 for the twelve month period ending on the last day of the prior calendar year and a bonus in the amount of $200,000 the first time EBITDA exceeds $12,000,000 for the twelve month period ending on the last day of the prior calendar year.

## Section 5.20    Exemption From Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer from the Debtors to the Reorganized Debtors or any other Person or entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## Section 5.21    Payment of Compromised Plan Related Fees and Installment Fees

On the Effective Date, the Debtors shall pay all Plan Related Fees.  The amount payable by the Debtors on account of the Cortec Professional Fees shall be less the sum held in the Cortec Deposit which deposit shall remain with Cortec.  All Installment Fees shall be paid by the Reorganized Debtors in four quarterly installments of $125,000 beginning on June 30, 2011, but only to the extent that, at the time of payment, cash on hand exceeds amounts outstanding under the Amended and Restated Revolving Credit Facility.  To the extent any Installment Fees are not fully paid when due, they shall be paid by the Reorganized Debtors on a quarterly basis until paid in full to the extent of cash on hand in excess of amounts outstanding under the Amended and Restated Revolving Credit Facility; provided, however, that no more than $250,000 in Installment Fees shall be payable in any quarter.

## ARTICLE 6
## PROVISIONS GOVERNING DISTRIBUTIONS

### Section 6.01    Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the relevant provisions set forth in the Plan.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Notwithstanding the foregoing, the Debtors or the Reorganized Debtors shall file any and all objections to General Unsecured Claims on or before the Claims Objection Deadline.  Any General Unsecured Claims that are not objected to by the Debtors or the Reorganized Debtors on or before the Claims Objection Deadline shall be Allowed Claims no later than the Claims Objection Deadline and distributions on such Allowed General Unsecured Claims shall be made as soon as reasonably practical after the Claims Objection Deadline.

### Section 6.02    Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other Entity designated by the Reorganized Debtors as a Disbursing Agent on the Effective Date.  Any Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### Section 6.03    Rights and Powers of Disbursing Agent

(a)     **Powers of the Disbursing Agent**

The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(b)     **Expenses Incurred On or After the Effective Date**

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

**Section 6.04     Distributions on Account of Claims Allowed After the Effective Date**

(a)     **Payments and Distributions on Disputed Claims**

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

(b)     **Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties: (i) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Disputed Claims have been Allowed or not Allowed.

- 36 -

**Section 6.05  Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**(a)    Delivery of Distributions in General**

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims on the Effective Date (i) at the address set forth on any proof of Claim filed by such Holder, or, (ii) in the event that no address was provided in the proof of Claim at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions with respect to the foregoing subsections (i) and (ii) shall be determined at the discretion of the Disbursing Agent.

**(b)    Minimum Distributions**

The Disbursing Agent shall not be required to make distributions of less than fifty dollars ($50.00) to the holder of any Claim unless a request therefor is made in writing to the Disbursing Agent.

**(c)    Undeliverable Distributions and Unclaimed Property**

(i) Failure to Claim Undeliverable Distributions

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is returned to the Disbursing Agent. After such date, all unclaimed property or interests in property shall be remitted to the Agent on behalf of, and for distribution to, the Existing Lenders pursuant to Section 3.04(a) of the Plan, and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

(ii) Failure to Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property. In such cases, any Cash held for payment on account of such Claims shall be remitted to the Agent on behalf of, and for distribution to, the Existing Lenders pursuant to Section 3.04(a) of the Plan, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors or Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

FP01/ 6376935.8

**Section 6.06    Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Reorganized Debtors and Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

**Section 6.07    Claims Paid by Third Parties**

The Debtors or the Reorganized Debtors, as applicable, may seek to reduce a Claim (or disallow such Claim), to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, the Reorganized Debtor shall be entitled to seek the recovery of such distribution, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**Section 6.08    Claims Payable by Third Parties**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 6.09    Applicability of Insurance Policies**

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any

- 38 -

Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers. All rights of the Debtors or their Estates under or in connection with insurance policies shall vest in the Reorganized Debtors as of the Effective Date.

# ARTICLE 7
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## Section 7.01    Assumption/Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be assumed by the Debtors (other than the Existing Management Agreement which shall be rejected) unless such executory contract or unexpired lease: (a) is identified as part of the Plan Supplement to be filed prior to the Confirmation Hearing as a contract or lease being rejected pursuant to the Plan; (b) is the subject of separate motions to reject, assume, or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; or (c) is the subject of a dispute over the amount or manner of cure pursuant to the next section hereof and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time. Notwithstanding anything to the contrary herein, nothing in the Plan is intended to have, nor shall have, any effect whatsoever on any insurance policies, insurance coverages, or contracts of insurance issued to, or for the benefit of, the Debtors, the Reorganized Debtors, or the Estates or that cover claims against any other Person.

No later than 20 days prior to the date of the Confirmation Hearing or such other time as the Bankruptcy Court may determine, the Debtors shall file and serve each counter-party to an executory contract or unexpired lease a Notice of Intent to Assume or Reject, identifying the executory contracts and unexpired leases that will be assumed or rejected pursuant to the Plan. Inclusion of a contract, lease or other agreement on any Notice of Intent to Assume or Reject shall constitute adequate and sufficient notice that (i) any Claims related to a rejection shall be treated as General Unsecured Claims under the Plan, and (ii) the Debtors intend to assume or reject such executory contract or unexpired lease. The Notice of Intent to Assume or Reject shall include a proposed Assumption Effective Date or Rejection Effective Date, as applicable, and, if applicable, a Proposed Cure Amount and/or a proposed assignment. Notice of Intent to Assume or Reject may be amended or modified after it has been filed, provided that any such amendment or modification shall be served on any affected counterparty to an executory contract or unexpired lease.

The Plan shall constitute a motion to reject such executory contracts and unexpired leases as set forth in the Notice of Intent to Assume or Reject filed by the Debtors with the Bankruptcy Court prior to the Confirmation Hearing, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement,

executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their Estates.

The Plan shall constitute a motion to assume all executory contracts and unexpired leases assumed pursuant to this Section 7.01. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and (b) of the Bankruptcy Code.

**Section 7.02    Objections to Assumption of Executory Contracts and Unexpired Leases**

**(a)    Objection Procedure Generally**

Any party objecting to any Debtor's proposed assumption of an executory contract or unexpired lease based on a lack of adequate assurance of future performance or on any other ground including the adequacy of the Proposed Cure Amount set forth in the Notice of Intent to Assume or Reject shall file and serve a written objection to the assumption of such contract or lease and serve such objection on the Debtors and the Existing Agent within 15 days from the date of the service of the Notice of Intent to Assume or Reject. Failure to timely file an objection shall constitute consent to the assumption and assignment of such contracts and/or leases, including an acknowledgment that the proposed assumption provides adequate assurance of future performance and that the applicable Proposed Cure Amount set forth in the Notice of Intent to Assume or Reject is proper and sufficient for purposes of section 365 of the Bankruptcy Code.

**(b)    Objection Based on Grounds Other Than Proposed Cure Amount**

If any party timely and properly files an objection to assumption based on the Assumption Effective Date or any ground other than the adequacy of the Proposed Cure amount set forth in the Notice of Intent to Assume or Reject and the Bankruptcy Court ultimately determines that any Debtor cannot assume the executory contract or unexpired lease, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been excluded therefrom and shall be rejected.

**(c)    Objection Based on Proposed Cure Amount**

If any party timely and properly files an objection to assumption based on the adequacy of the Proposed Cure Amount set forth in the Notice of Intent to Assume or Reject and such objection is not resolved between the Debtors and the objecting party, the Bankruptcy Court shall resolve such dispute at the Confirmation Hearing or another hearing date to be determined by the Bankruptcy Court. The resolution of such dispute shall not affect the assumption of the executory contract or lease that is the subject of such dispute but rather shall affect only the "cure" amount the Debtors must pay in order to assume such contract or lease. Notwithstanding the immediately preceding sentence, if the Debtors in their discretion determine that the amount asserted to be the necessary "cure" amount would, if ordered by the Bankruptcy Court, make the assumption of the executory contract or unexpired lease imprudent, then the Debtors may elect to (1) reject the executory contract or unexpired lease, or (2) request an expedited hearing on the

resolution of the "cure" dispute, exclude assumption or rejection of the contract or lease from the scope of the Confirmation Order, and retain the right to reject the executory contract or unexpired lease pending the outcome of such dispute.

**Section 7.03   Cure Costs**

At the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the Cure amount in Cash on or as soon as practical after the later of (i) the Effective Date or (ii) the date on which such Cure Claim becomes Allowed; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.

**Section 7.04   Claims Arising from Rejection, Expiration or Termination**

Rejection Claims created by the rejection of executory contracts and unexpired leases must be filed with the Bankruptcy Court and served on the Debtors by the Rejection Bar Date. Any such Rejection Claims for which a proof of claim is not filed by the Rejection Bar Date shall be forever barred from assertion and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective Estates, Affiliates or Assets.  Unless otherwise ordered by the Bankruptcy Court, all such Rejection Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection by the Reorganized Debtors and/or Disbursing Agent.

**Section 7.05   Treatment of Compensation and Benefit Programs**

Except to the extent (i) otherwise provided for in the Plan, (ii) previously assumed or rejected by an order of the Bankruptcy Court entered on or before the Confirmation Date, (iii) the subject of a pending motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) previously terminated, all employee compensation and benefit programs of the Debtors in effect during the pendency of the Chapter 11 Cases, including all health and welfare plans, 401(k) plans, and all benefits subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and in effect during the pendency of the Chapter 11 Cases, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed and assigned pursuant to section 365 of the Bankruptcy Code and the Plan.  Nothing contained herein shall be deemed to modify the existing terms of such employee compensation and benefit programs, including, without limitation, the Debtors' and the Reorganized Debtors' rights of termination and amendment thereunder.

**Section 7.06  Pass-Through**

Any rights or arrangements necessary or useful to the operation of the Debtors' business but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment, be passed through the bankruptcy proceedings for the Debtors and the Debtors' counterparty's benefit, unaltered and unaffected by the bankruptcy filings or Chapter 11 Cases.

**Section 7.07  Assumed Executory Contracts and Unexpired Leases**

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

**Section 7.08  Preexisting Obligations Owed to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected or repudiated executory contracts or unexpired leases.

**Section 7.09  Intercompany Contracts, Assumed Contracts and Leases, and Leases Entered After Petition Date**

Intercompany contracts, leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Reorganized Debtor in the ordinary course of business.

FP01/ 6376935.8

**Section 7.10    Assumption of Indemnification Provisions**

The Debtors, and upon the Effective Date, the Reorganized Debtors, shall assume all of the Indemnification Provisions in place on and before the Effective Date for Indemnified Parties for Claims related to or in connection with any actions, omissions or transactions occurring before the Effective Date.

**Section 7.11    Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE 8**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

**Section 8.01    Allowance of Claims and Interests**

Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors after Confirmation will have and retain any and all rights and defenses the Debtors had with respect to any Claim as of the Petition Date.

**Section 8.02    Objections to Claims**

The Debtors or Reorganized Debtors, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims, and shall consult with the Agent in respect of such decisions and actions with respect to Claims equal to or greater than $25,000.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed, Contingent or Unliquidated Claim in an amount less than $25,000 without approval of the Bankruptcy Court.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed, Contingent or Unliquidated Claim in an amount equal to or greater than $25,000 (a) without approval of the Bankruptcy Court if the Agent does not object in writing to a proposed settlement within 10 days of receiving written notice thereof or (b) with approval of the Bankruptcy Court.

**Section 8.03    Estimation of Claims**

Any Debtor or Reorganized Debtor, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor or Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

**Section 8.04   No Distributions Pending Allowance**

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**Section 8.05   Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. The Disbursing Agent shall make to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

**Section 8.06   Reserves for Disputed General Unsecured Claims**

Notwithstanding all references in the Plan to General Unsecured Claims that are Allowed, in undertaking the calculations concerning Allowed General Unsecured Claims under the Plan, including the determination of the amount of distributions due to the Holders of Allowed General Unsecured Claims, each Disputed General Unsecured Claim shall be treated as if it were an Allowed General Unsecured Claim, as appropriate, except that if the Bankruptcy Court estimates the portion of a Disputed General Unsecured Claim to be Allowed or otherwise determines the amount which would constitute a sufficient reserve for a Disputed General Unsecured Claim (which estimations and determinations may be requested by the Reorganized Debtors), such amount as determined by the Bankruptcy Court shall be used as to such General Unsecured Claim.

The distributions due in respect of Disputed General Unsecured Claims based on the calculations required by the Plan shall be reserved for the Holders of the Disputed General Unsecured Claims and deposited into the Plan Distribution Account. The funds so deposited on

behalf of a Creditor holding a particular Disputed General Unsecured Claim is referred to in the Plan as the "Reserve Fund."

After an objection to a Disputed General Unsecured Claim is withdrawn or determined by Final Order, the distributions due on account of any resulting Allowed General Unsecured Claim shall be paid by the Disbursing Agent from the Plan Distribution Account for such Creditor. No interest shall be due to a Disputed General Unsecured Claim holder based on the delay attendant to determining the allowance of such General Unsecured Claim. Should the distribution on account of any Allowed General Unsecured Claim of such Creditor exceed the Reserve Fund, the shortfall may be paid from available sums, if any, for the next distribution, provided that, in no event shall the Creditor have recourse to any payments already made to others or to sums reserved by the Disbursing Agent in connection with the Reserve Fund or for ongoing fees and costs of administering or effectuating the Plan.

## Section 8.07    General Unsecured Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors in respect of such Claim prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Reorganized Debtors or Disbursing Agent from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE 9
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

## Section 9.01    Conditions Precedent To Confirmation

It is a condition to Confirmation that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan, and (b) the proposed form of the Confirmation Order is reasonably satisfactory in form and substance to each of the Plan Document Parties.

## Section 9.02    Conditions Precedent To Consummation

It is a condition of Consummation that (a) the Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for these Chapter 11 Cases by the Clerk of the Bankruptcy Court in form and substance reasonably acceptable to Plan Document Parties; (b) the Confirmation Order shall be a Final Order; (c) the Amended and Restated Credit Documents and the Amended and Restated Credit Documents shall have been executed and delivered by the respective parties thereto and all conditions precedent to the effectiveness of each such document (other than Confirmation of the Plan) shall have been satisfied or waived; (d) Cash in the Plan Distribution Amount shall have been deposited in the Plan Distribution

Account; (e) all statutory fees then due to the United States Trustee shall have been paid in full or shall be payable in full under the Plan; (f) the Debtors shall have Cash On Hand (exclusive of the proceeds of the Tax Refund) on the Effective Date in an amount not less than $1 million after giving effect to all payments and distributions required to be made under the Plan on the Effective Date including the payment of the New Facility Fee Amount and Plan Related Fees; (g) the Reorganized Debtors shall have been duly organized and in good standing; (h) the Reorganized Debtors and all parties to the Plan Documents shall have executed the Plan Documents all of which shall be reasonably acceptable to the Plan Document Parties, other than Cortec, each in its sole discretion, provided, however, that (x) the New Stockholders' Agreement shall be in a form reasonably acceptable to the Plan Document Parties and (y) any documentation or matter consistent with a term specifically addressed in the Lender/ACAS Term Sheet and the Amended and Restated Credit Facility Term Sheet shall be deemed acceptable to the Plan Document Parties; and (i) all other material actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

### Section 9.03   Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### Section 9.04   Waiver Of Conditions

Except for Sections 9.02(a), (d), and (e) each of the conditions to Consummation set forth in the Plan may be waived in whole or in part by written consent of the Plan Document Parties, without any notice to other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized Debtors).  The failure of the Debtors or the Reorganized Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### ARTICLE 10
### SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### Section 10.01  Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, including, *inter alia,* (i) the compromise and resolution of the Lender Secured Claims, (ii) the compromise and resolution of Subordinated Noteholder Claims, (iii) the compromise and resolution of Unpaid Management Fee Claims, (iv) the commitment to provide the Amended and Restated Resolving Credit Facility, (v) the grant of releases provided in the Plan, and (vi) the cancellation of Subsidiary Equity Interests and Equity Interests, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims against and Equity Interests in, the Debtors (the "Global Compromise").  The entry of the Confirmation Order shall constitute the

Bankruptcy Court's approval of the Global Compromise and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. As further consideration for the Global Compromise memorialized in the Plan, the Plan Related Fees shall be deemed approved without need for further application or notice, and be paid by the Reorganized Debtors on the Effective Date.

**Section 10.02  Releases by the Debtors**

**To the extent approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates, their successors and assigns, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, the Reorganized Debtors or the Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Estates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release any Causes of Action of any Debtor or Reorganized Debtor: (a) against a Released Party arising from any contractual obligations or Customs Obligations owed to the Debtors or Reorganized Debtors other than the Excluded Claims and Avoidance Actions; (b) expressly set forth in and preserved by the Plan, the Plan Supplement or related documents; (c) arising from claims for gross negligence, willful misconduct or criminal conduct; or (d) against a Released Party who submits a Release Opt-Out.**

**Section 10.03  Releases by Holders of Claims and Interests**

**To the extent permitted by applicable law and approved by the Bankruptcy Court, as of the Effective Date, each Holder of a Claim or an Interest, except Holders of any Claims: (a) who vote to reject the Plan and who submit a Release Opt-Out indicating their decision to not participate in the release set forth in the Plan; (b) who do not vote to accept or reject the Plan but who timely submit a Release Opt-Out indicating their decision to not participate in the release set forth in the Plan; or (c) who are in a Class that is deemed to reject the Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, the Reorganized Debtors or an Estate, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually**

- 47 -

or collectively), based on or relating to any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date; provided, however, that the foregoing release shall not operate to waive or release any Causes of Action of any Releasing Party: (w) against a Released Party arising from any contractual or other obligations owed to the Releasing Party unrelated to the Debtors or the Chapter 11 Cases; (x) expressly set forth in and preserved by the Plan, the Plan Supplement or related documents; (y) arising from claims for gross negligence, willful misconduct or criminal conduct; or (z) against a Released Party who submits a Release Opt-Out. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any Customs Obligations or post-Effective Date obligations of any party under the Plan, or any Plan Document.

## Section 10.04 Exculpation

Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, obligation, Cause of Action, or liability for any Exculpated Claim, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

## Section 10.05 Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

## Section 10.06 Injunction

Except as otherwise expressly provided in the Plan, the Plan Supplement or related documents, or for obligations issued pursuant to the Plan, from and after the Effective Date, all Releasing Parties are permanently enjoined, from taking any of the following actions against the Debtors or the Reorganized Debtors: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or the Reorganized Debtors on account of or in connection with or with respect to any Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors or the property or estates of the Debtors or the Reorganized Debtors on account of or in connection with or with respect to any Claims or Interests; (d) asserting any right of setoff of any kind against any obligation due from the Debtors or the Reorganized Debtors or against the property or Estates of the Debtors or the Reorganized Debtors on account of or in connection with or with respect to any Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.  Nothing in the Plan or Confirmation Order shall preclude any Releasing Party from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Debtors or Reorganized Debtors, as applicable, and any Releasing Party agree in writing that Releasing Party will: (i) waive all Claims against the Debtors or Reorganized Debtors, the Reorganized Debtors, and the Estates related to such action and (ii) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any.**

**Section 10.07  Setoffs**

Except as otherwise expressly provided for in the Plan, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any Claims, rights, and Causes of Action (other than Avoidance Actions and Excluded Claims) of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action (other than Avoidance Actions and Excluded Claims) against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before

the Confirmation Date and the Bankruptcy Court shall have entered an order authorizing such setoff.

## Section 10.08  Release of Liens

Except as otherwise provided in the Plan, the Amended and Restated Credit Documents, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date or upon the receipt by each Plan Document Party of the consideration to which such Plan Document Party is entitled, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

## Section 10.9  Preservation of Rights of Action by the Debtors and the Reorganized Debtor

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Reorganized Debtors shall retain and may enforce, and shall have the sole right to enforce, any claims, demands, rights and Causes of Action that the Debtors or Estates may hold against any Entity, as appropriate.  The Reorganized Debtors or their successors, as the case may be, may pursue such retained claims, demands, rights or Causes of Action (other than Avoidance Actions and Excluded Claims), as appropriate, in accordance with the best interests of the Reorganized Debtors or their successors, holding such claims, demands, rights or Causes of Action.  Further, the Reorganized Debtors retain their rights to file and pursue, and shall have the sole right to file and pursue any adversary proceedings against any account Debtors related to debit balances or deposits owed to the Debtor.

## ARTICLE 11
## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS AND INTERCOMPANY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

**ARTICLE 12**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, including, without limitation, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to the Plan, any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7. Adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16. Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

17. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

18. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

23. Enforce all orders previously entered by the Bankruptcy Court; and

24 Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE 13
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### Section 13.01 Modification and Amendments

Effective as of the date hereof and subject to the limitations and rights contained in the Plan and subject to the consent of the Plan Document Parties which consent shall not be unreasonably withheld or delayed: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### Section 13.02 Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### Section 13.03 Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases effected by the Plan and any document or agreement executed pursuant to the Plan shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

### Section 14.01 Bar Dates For Certain Claims

**(a)     Administrative Claims**

The Confirmation Order will establish an Administrative Claims Bar Date for filing of all Administrative Claims (but not including Professional Fee Claims or claims for the expenses of the members of the Committee, or claims that are based on liabilities incurred in the ordinary course of the Debtors' business), which date will be 45 days after the Effective Date. Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary case liabilities, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by the Reorganized Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtors or Reorganized Debtors, as the case may be, and other parties in interest, shall have 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

**(b) Administrative Ordinary Course Liabilities**

Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the Debtors' businesses (other than Claims of governmental units for taxes (and for interest and/or penalties related to such taxes)), including Customs Obligations, shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless objected to by the Debtors or the Reorganized Debtors, shall be assumed and paid by the Debtors or the Reorganized Debtors, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

**(c) Administrative Tax Claims**

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on the Reorganized Debtors and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a claim by the applicable bar date shall be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors or their property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must file and serve its objection on counsel to the Reorganized Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority files and serves its application.

**(d) Professional Fee Claims**

All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code for services rendered to

FP01/ 6376935.8

or on behalf of the Debtors or the Committee prior to the Effective Date must be filed and served on the Reorganized Debtors and their counsel no later than 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and their counsel and the requesting Professional or other entity no later than 30 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served. The Reorganized Debtors shall be authorized to retain and compensate the Debtors' Professionals for services rendered after the Effective Date without further order of the Bankruptcy Court.

## Section 14.02  Payment Of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code.

## Section 14.03  Term Of Injunctions Or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

## Section 14.04  Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

## Section 14.05  No Admissions

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth in the Plan, including liability on any Claim.

## Section 14.06  Nonseverability of Plan Provisions

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; provided, further, that the Debtors may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the

- 55 -

foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

## Section 14.07  Return of Security Deposits

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Person or Entity at any time after the Petition Date shall be returned to the Reorganized Debtors within twenty (20) days after the Effective Date, without deduction or offset of any kind.

## Section 14.08  Entire Agreement

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## Section 14.9  Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

## Section 14.10  Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

## Section 14.11  Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

## Section 14.12  Filing of Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 14.13  Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not organized under Delaware law shall be governed by the laws of the state of organization of such Debtor or Reorganized Debtor.

Dated:  November 1, 2010
   Wilmington, Delaware

       Respectfully submitted,

       PLUMBING HOLDING CORPORATION


    By:  */s/  Edward J. Moulin*_____
       Name:  Edward J. Moulin
       Title:   Chief Financial Officer

       JONES STEPHENS CORP.


    By:  */s/  Edward J. Moulin*_____
       Name:  Edward J. Moulin
       Title:   Chief Financial Officer

FP01/ 6376935.8

# PLAN SCHEDULES

Schedule 7.01      Executory Contracts and Unexpired Leases to be Assumed or Rejected