## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Plumbing Holdings Corporation, et al., | ) | Case No. 09-14413 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |


### DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION
### OF THE DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
### <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

Author block

Andrew C. Kassner (DE 4507)
Howard A. Cohen (DE 4082)
DRINKER BIDDLE & REATH LLP
1100 North Market Street, Suite 1000
Wilmington, DE  19801
Telephone: (302) 467-4200
Facsimile:  (302) 467-4201

- and -

Michael P. Pompeo (admitted *pro hac vice*)
500 Campus Drive
Florham Park, NJ  07932
Telephone: (973) 360-1100
Facsimile:  (973) 360-9831


Attorneys for Debtors and Debtors in Possession

# TABLE OF CONTENTS

Page

I. BACKGROUND .................................................................................................- 6 -

II. HIGHLIGHTS OF THE PLAN .........................................................................- 10 -

III. ARGUMENT ...................................................................................................- 11 -

A PLAN PROPONENT MUST SHOW COMPLIANCE
WITH THE PROVISIONS OF THE BANKRUPTCY CODE
BY A PREPONDERANCE OF THE EVIDENCE .....................................- 11 -

The Plan Meets All of the Requirements for Confirmation
Under Section 1129(a) of the Bankruptcy Code .........................................- 12 -

The Plan Complies With the Applicable Provisions
of the Bankruptcy Code (Section 1129(a)(1)) ...........................................- 12 -

The Plan Designates Classes of Claims and Equity Interests and Such
Classification is Proper (Sections 1123(a)(1) and 1122) .......................- 12 -

The Plan Satisfies The Requirements Of Bankruptcy Code Section 1122 .......- 13 -

Specification of Unimpaired Classes (Section 1123(a)(2)) ..................- 14 -

Treatment of Impaired Classes (Section 1123(a)(3)) ...........................- 14 -

Equal Treatment Within Classes (Section 1123(a)(4)) ........................- 14 -

Means for Implementation (Section 1123(a)(5)) .................................- 14 -

Charter Provisions (Section 1123(a)(6)) ............................................- 15 -

Selections for Certain Positions (Section 1123(a)(7)) ........................- 16 -

11 U.S.C. §1123(b) ............................................................................- 16 -

The Proponents of the Plan Comply with
the Applicable Provisions of Title 11 (Section 1129(a)(2)) ........................- 18 -

The Plan was Proposed in Good Faith (Section 1129(a)(3)) .....................- 22 -

Payments for Services or Costs and Expenses (Section 1129(a)(4)) .........- 23 -

Service of Certain Individuals (Section 1129(a)(5)) .................................- 24 -

Rate Changes (Section 1129(a)(6)) ..........................................................- 24 -

The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7)) ............- 25 -\\

Acceptance by All Impaired Classes (11 U.S.C. § 1129(a)(8)) .................- 26 -

Treatment of Priority Claims (Section 1129(a)(9)) ..................................- 27 -

Acceptance of At Least One Impaired Class (Section 1129(a)(10)) ..........- 27 -

Feasibility (Section 1129(a)(11)) .............................................................- 28 -

Payment of Certain Fees (Section 1129(a)(12)) .......................................- 30 -

**Continuation of Retiree Benefits (Section 1129(a)(13))** ..............................- 31 -

**11 U.S.C. § 1129(a)(14) Through 11 U.S.C. § 1129(a)(16) Are Inapplicable** .........- 32 -

**Confirmation of Plan Over Nonacceptance
of Impaired Classes (11 U.S.C. § 1129(b))** ................................................- 32 -

**IV. DEBTORS REPLY TO COMMITTEE RESPONSE** ................................................- 34 -

**V. CONCLUSION** ...................................................................................................- 35 -

WM01/ 7852870.3

# TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankruptcy Code, N.Y. (In re Chateaugay Corp.)*,
  89 F.3d 942 (2d Cir. 1996) ............................................................. - 13 -

*Chase Manhattan Mortgage & Realty Trust v. Bergman (In re Bergman)*,
  585 F.2d 1171 (2d Cir. 1978) .......................................................... - 29 -

*Clarkson v. Cooke Sales & Serv., Co. (In re Clarkson)*,
  767 F.2d 417 (8th Cir. 1985) .......................................................... - 29 -

*Fed. Home Loan Mortgage Corp. v. Bugg*,
  172 B.R. 781 (E.D. Pa. 1994) .......................................................... - 12 -

*Gruen Mktg, Corp. v. Asia Commercial Co.  (In re Jewelcor Inc.)*,
  150 B.R. 580 (Bankr. M.D. Pa. 1992) ................................................. - 17 -

*Hanson v. First Bank of S.D.*,
  828 F.2d 1310 (8th Cir. 1987) ......................................................... - 22 -

*Heartland Fed. Says. & Loan Ass'n v. Briscoe Enters., Ltd., II
  (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160 (5th Cir. 1993) ................ - 11 -

*In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143  (3d Cir. 1986) ................ - 22 -

*In re Armstrong World Indus., Inc.*, 348 B.R. 136 (D. Del. 2006) ............... - 28 -

*In re Century Glove, Inc.*,
  No. Civ. A. 90-400, 1993 WL 239489  (D. Del. Feb. 10, 1993) ................ - 23 -

*In re Cont'l Airlines*,
  203 F.3d. 203 (3d. Cir. 2000) ............................................... - 17 -, - 29 -

*In re Drexel Burnham  Lambert Group, Inc.*,
  138 B.R. 723 (Bankr. S.D.N.Y. 1992) ............................... - 29 -, - 30 -

*In re IPC Atlanta L.P.*,
  142 B.R. 547 (Bankr. N.D. Ga. 1992) ............................................. - 29 -

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986) .................................. - 18 -, - 33 -

*In re Lakeside Global II, Ltd.*,
  116 B.R. 499, (Bankr. S.D. Tex. 1989) ........................................... - 28 -

*In re Magnatrax Corp.*,
  2003 WL 22807541 (Bankr. D.Del. Nov. 17, 2003) ......................... - 11 -

*In re Mayer Pollock Steel Corp.*,
  174 B.R. 414 (Bankr. E.D. Pa. 1994) .............................................. - 29 -

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) ................................... - 22 -, - 28 -

*In re Orlando Investors, L.P.*,
103 B.R. 593 (Bankr. E.D. Pa. 1989) ............................................................- 29 -

*In re PPI Enters. (U.S.) Inc.*,
228 B.R. 339 (Bankr. D. Del. 1998) ..............................................................- 22 -

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000) ...........................................................- 18 -, - 22 -

*In re Resorts Int'l Inc.*,
145 B.R. 412 (Bankr. D.N.J. 1990) ..................................................- 18 -, - 23 -

*In re Richard Buick, Inc.*,
126 B.R. 840 (Bankr. E.D. Pa. 1991) .............................................................- 11 -

*In re Rolling Green Country Club*,
26 B.R. 729 (Bankr. D. Minn. 1982) ..............................................................- 28 -

*In re Texaco Inc.*,
84 B.R. 893 (Bankr. S.D.N.Y. 1988) ..............................................................- 30 -

*In re Toy & Sports Warehouse, Inc.*,
37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..............................................................- 22 -

*In re Union Meeting Partners*,
165 B.R. 553 (Bankr. E.D. Pa. 1994) .............................................................- 11 -

*John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*,
987 F.2d 154 (3d Cir. 1993) ...........................................................................- 13 -

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988) ...........................................................................- 29 -

*Pizza of Haw., Inc. v. Shakey's Inc. (In re Pizza of Haw., Inc.)*,
761 F.2d 1374 (9th Cir. 1985) ........................................................................- 30 -

*Steelcase v. Johnston (In re Johnston)*,
21 F.3d 323 (9th Cir. 1994) ............................................................................- 13 -

**Statutes**

11 U.S.C. § 1122(a) .........................................................................................- 13 -

11 U.S.C. § 1122(b) .........................................................................................- 13 -

11 U.S.C. § 1123(a)(2) .....................................................................................- 14 -

11 U.S.C. § 1123(a)(3) .....................................................................................- 14 -

11 U.S.C. § 1123(a)(4) .....................................................................................- 14 -

11 U.S.C. § 1123(a)(5) .....................................................................................- 14 -

11 U.S.C. § 1123(a)(6) .....................................................................................- 15 -

11 U.S.C. § 1123(a)(7) .....................................................................................- 16 -

11 U.S.C. § 1123(a)(l) ......................................................................................- 12 -

WM01/ 7852870.3

11 U.S.C. § 1123(b) ........................................................................................ - 16 -

11 U.S.C. § 1125(b) & (c) .............................................................................. - 19 -

11 U.S.C. § 1126(a), (f), (g) .......................................................................... - 20 -

11 U.S.C. § 1126(c) ....................................................................................... - 21 -

11 U.S.C. § 1126(g) ....................................................................................... - 32 -

11 U.S.C. § 1129(b)(1) ................................................................................... - 32 -

11 U.S.C. § 1129(b)(2)(c) .............................................................................. - 33 -

28 U.S.C. §§ 157, 1134 .................................................................................. - 17 -

**Other Authorities**

6 QUEENAN, ET AL., CHAPTER 11 THEORY AND PRACTICE,
  A GUIDE TO REORGANIZATION § 32-04, at 32:6 (1994) .................................. - 16 -

7 COLLIER ON BANKRUPTCY ¶ 1129.03[11], at 1129-74.1 (15th ed. rev. 2007) ...................... - 29 -

7 COLLIER ON BANKRUPTCY ¶ 1129.04[3][a], at 1129-77 (15th ed. rev. 2007) ...................... - 33 -

H.R. Rep. 95-595, at 412 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 ...................... - 18 -

H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977);
  S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978) ................................................ - 12 -

Kenneth N. Klee, *All You Ever Wanted to Know
  About Cram Down Under the New Bankruptcy Code*,
  53 AM. BANKR. L.J. 133, 142 (1979) ............................................................. - 33 -

S. Rep. No. 95-589, at 126 (1977),
  *reprinted in* 1978 U.S.C.C.A.N. 65787, 5912 (Section 1129(a)(2) .............................. - 18 -

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Plumbing Holdings Corporation, et al.,[1] | ) | Case No. 09-14413 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

**DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION**
**OF THE DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Plumbing Holdings Corporation ("PHC") and Jones Stephens Corp. ("Jones Stephens" or "JSC"), debtors and debtors-in-possession (collectively, the "Debtors"), by and through their attorneys, Drinker Biddle & Reath LLP, hereby submit this memorandum (this "Memorandum") in support of confirmation of the *Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Plan") [Docket. No. 648] filed on November 15, 2010 with the United States Bankruptcy Court for the District of Delaware (the "Court") in connection with the above-captioned chapter 11 cases. The facts set forth in this Memorandum are the facts the Debtors intend to adduce at the confirmation hearing through proffer, testimony or affidavit.

**I. BACKGROUND**

1.      On December 15, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned bankruptcy cases (the "Chapter 11 Cases"). The Chapter 11 Cases were procedurally consolidated and are being jointly administered.

---

[1]   The Debtors in these cases, along with the last four digits of each of the Debtor's federal tax identification number, are: Plumbing Holdings Corporation (5376) and Jones Stephens Corp. (8381).

2.      The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No trustee or examiner has been appointed in the Chapter 11 Cases.

4.      On January 7, 2010, an Official Committee of Unsecured Creditors (the "Creditors Committee") was appointed in the Chapter 11 Cases.

5.      Jones Stephens is a leading designer, marketer and distributor of specialty plumbing supplies, primarily to the wholesale commercial plumbing trade and to do-it-yourself retailers and hardware stores.  Founded in 1993 by Butch Jones and Joey Stephens, two veterans of the plumbing products industry, Jones Stephens supplies a wide range of tubular products, decorative plumbing products, pipe accessories, brass fittings and valves, plastic specialties, copper fittings and coils, liquid drain cleaner, gaskets, couplings, among numerous other plumbing products.

6.      Jones Stephens employs approximately 200 non-unionized employees in two locations comprising approximately 370,000 square feet. The Debtors are headquartered in a modern built 258,000 square-foot facility Moody, Alabama which is approximately 20 miles east of Birmingham.  Jones Stephens operates a second facility located in Pottsville, Pennsylvania, which is approximately 50 miles northeast of Harrisburg.  The Pottsville facility is a new facility, containing approximately 95,000 and 5,000 square feet of warehouse and office space, respectively.

7.      Jones Stephens supplies a wide range of tubular products, decorative plumbing products, pipe accessories, brass fittings and valves, plastic specialties, copper fittings and coils, liquid drain cleaner, gaskets, couplings, among numerous other plumbing products.  Jones Stephens is differentiated from many other distributors in that it: (i) markets products both under

- 7 -

its own brands as well as leadings brands of third party manufacturers, (ii) offers an extensive range of product (more than 20,000 SKUs) which exhibit limited product obsolescence, (iii) helps customers minimize their inventory levels and offer high fill rates by "breaking boxes" (i.e., willingness to sell in less than full carton quantities), (iv) provides exceptional customer service and fill rates, (v) operates as a virtual manufacturer, and (v) serves a broad customer base operating in diverse construction markets (i.e., new residential, commercial, HVAC, remodeling, and repair).

8.      As of the Petition Date, JSC had aggregate assets (including goodwill) and liabilities of approximately \$84,000,000[2] and approximately \$101,000,000 respectively.  Of this amount, approximately \$4.8 million was comprised of cash and cash equivalents, approximately \$13 million was comprised of accounts receivable, approximately \$21 million was comprised of inventory, and approximately \$46 million was comprised of other assets.

9.      JSC is the wholly owned subsidiary of PHC.  PHC is a holding company with substantially no assets other than its ownership interest in JSC.

10.      On November 1, 2010, the Debtors filed the Plan and the *Disclosure Statement with Respect to Debtors Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Docket No. 615] (including all exhibits and supplements thereto, the "Disclosure Statement").

11.      On November 12, 2010, the Court entered the *Order (A)Approving Disclosure Statement with Respect to Debtors Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code;(B)Fixing the Voting Record Date; (C)Approving Solicitation and Voting Procedures with Respect to Debtors Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code; (D)Approving Form of Solicitation Package and Notices;*

*and (E)Scheduling Certain Dates in Connection therewith* (the "Disclosure Statement and Solicitation Order").

12.     Pursuant to the Disclosure Statement and Solicitation Order, this Court established (i) November 12, 2010, as the record date for determining: (a) the creditors and interest holders (including "holders of stocks, bonds, debentures, notes and other securities") entitled to receive the Confirmation Hearing Notice, Ballots, Disclosure Statement, Plan and Disclosure Statement and Solicitation Order (collectively, the "Solicitation Package") pursuant to the solicitation procedures approved in the Disclosure Statement and Solicitation Order; (b) the creditors and interest holders entitled to vote to accept or reject the Plan; and (c) whether claims or interests have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of the claim or equity interest; (ii) 4:00 p.m., prevailing Eastern Time on December 15, 2010, as the voting deadline (the "Voting Deadline") by which all persons or entities (or their respective nominees) entitled to vote on the Plan were required to have returned their completed ballots to The Garden City Group (the "Voting Agent") for purposes of voting on the Plan; (iii) 4:00 p.m., prevailing Eastern Time on December 15, 2010, as the deadline by which objections to the Plan were to be filed (the "Plan Objection Deadline"); and (iv) 10:00 a.m., prevailing Eastern Time on December 21, 2010, as the time and date for the hearing to consider confirmation of the Plan (the "Confirmation Hearing").

13.     Pursuant to the Disclosure Statement and Solicitation Order, the Debtors caused the Voting Agent to timely serve the Solicitation Package on all parties entitled to receive the Solicitation Package, in accordance with the Solicitation Procedures.

---

2   Reported at book value.

14.     As set forth in greater detail in the Declaration of Jeffery S. Stein of the Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes On and Results of Voting with Respect to the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 722] (the "Voting Report"), the Plan has been accepted by at least two-thirds in amount and more than one half in number of holders of claims entitled to vote to accept or reject the Plan.  In fact, the Plan has been accepted by 100% of all voting creditors.

## II. HIGHLIGHTS OF THE PLAN

15.     The Debtors' Plan is a plan of reorganization.  The Plan implements the restructuring of the Debtors' balance sheets.  It reflects certain agreements and compromises between and among the Debtors, the Necessary Lenders[3], ACAS, Cortec, the Revolving Lender and the Agent and provides, generally, the following:

- The Lender Secured Claims shall be reduced from approximately $61.4 million to $32.5 million.  Holders of Lender Secured Claims shall receive, among other things, their Pro Rata Share of Net Available Cash, $17.5 million in New Preferred Stock, 50.25% of the New Common Stock and participation in the Amended and Restated Credit Facility on the Effective Date and remaining Cash in the Plan Distribution Account after payment of all Allowed Claims;

- Ares Capital Corporation shall replace CIT Lending Services Corporation as agent under the Amended and Restated Credit Agreement;

- The Revolving Lender (Bank of Ireland) shall extend to the Reorganized Debtors revolving loans in an amount up to $4,000,000;

- The Mezzanine Subordinated Debt of approximately $26.7 million shall be discharged and Holders of Subordinated Noteholder Claims shall receive their Pro Rata Share of 34.25% of the New Common Stock;

- Holders of Allowed General Unsecured Claims against JSC, not otherwise satisfied pursuant to a prior Order of the Bankruptcy Court, shall be paid in full,

---

[3] Terms not defined herein shall have the meaning ascribed to them in the Plan.

provided, however, that in the event that the total amount of all Allowed General Unsecured Claims against JSC exceeds $1.5 million, each Holder of an Allowed General Unsecured Claim against JSC shall receive its Pro Rata Share of $1.5 million;

- Holders of Unpaid Management Fee Claims shall receive 3% of the New Common Stock;

- All Equity Interests shall be cancelled and extinguished.

## III. ARGUMENT

### A PLAN PROPONENT MUST SHOW COMPLIANCE
### WITH THE PROVISIONS OF THE BANKRUPTCY CODE
### BY A PREPONDERANCE OF THE EVIDENCE

16.      As the Plan proponent, the Debtors bear the burden of proof on all elements necessary for confirmation.  *In re Richard Buick, Inc.*, 126 B.R. 840, 851 (Bankr. E.D. Pa. 1991) (debtor has ultimate burden of proving presence of all elements of section 1129 necessary to sustain confirmation order).  To meet that burden, the Debtors will show by a preponderance of the evidence that the Plan complies with the applicable provisions of the Bankruptcy Code.  *In re Magnatrax Corp.*, 2003 WL 22807541, at *4 (Bankr. D.Del. Nov. 17, 2003) ("The Debtors have satisfied the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence."); *Heartland Fed. Says. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160,1165 (5th Cir. 1993) (preponderance of the evidence is the debtor's appropriate standard of proof under § 1129(a)); *In re Union Meeting Partners*, 165 B.R. 553, 574, n. 17 (Bankr. E.D. Pa. 1994) (adopting preponderance standard with respect to requirements of § 1129), *aff'd mem.*, 52 F.3d 317 (3d Cir. 1995). As shown below, the Debtors have satisfied that burden and, accordingly, the Plan should be confirmed.

## The Plan Meets All of the Requirements for
## Confirmation Under Section 1129(a) of the Bankruptcy Code

17.     The Court shall confirm a chapter 11 plan if all of the requirements of subsections

1129(a)(l) through (a)(13) of the Bankruptcy Code are satisfied.  11 U.S.C. § 1129(a).  As set

forth more fully below, the Plan should be confirmed because the Debtors have satisfied (i) each

of the requirements of section 1129(a) of the Bankruptcy Code, with the exception of section

1129(a)(8), and (ii) each of the requirements set forth in section 1129(b).

## The Plan Complies With the Applicable Provisions
## of the Bankruptcy Code (Section 1129(a)(1))

18.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the

"applicable provisions" of the Bankruptcy Code.  In determining whether the Plan complies with

section 1129(a)(l), the Court must consider the following sections of the Bankruptcy Code:

section 1123(a), which sets forth certain elements that a plan must contain; section 1122, which

governs the classification of claims. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); S.

Rep. No. 989, 95th Cong., 2d Sess. 126 (1978); *Fed. Home Loan Mortgage Corp. v. Bugg*, 172

B.R. 781,783 (E.D. Pa. 1994) (Section 1129(a)(l) allows the bankruptcy court to confirm a plan

if the plan complies with the applicable provisions of Chapter 11).

## The Plan Designates Classes of Claims and Equity Interests and Such
## Classification is Proper (Sections 1123(a)(1) and 1122)

19.     Section 1123(a)(l) of the Bankruptcy Code requires that a plan classify all claims

(with the exception of certain administrative and priority claims) and all interests, and that the

classification comply with section 1122 of the Bankruptcy Code.  *See* 11 U.S.C. § 1123(a)(l).

With the exception of, *inter alia*, Administrative Claims, Professional Fee claims, and all fees

payable to the United States Trustee, which need not be classified, Article III of the Plan

designates eight (8) classes of Claims and Interests.  *See* Article III of Plan.

- 12 -

**The Plan Satisfies The Requirements Of Bankruptcy Code Section 1122**

20.    Section 1122 of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests in such class." 11 U.S.C. § 1122(a). By its plain language, section 1122 prohibits only the classification of dissimilar claims in the same class. *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993); *Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankruptcy Code, N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) ("Classification is constrained by two straight-forward rules: dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason."). As such, courts have broad discretion to determine the propriety of classification schemes in light of the facts of each case. *See Steelcase v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) ("bankruptcy court judges must have discretionary power in classifying claims under §1122(a)"). Additionally, section 1122(b) of the Bankruptcy Code expressly permits separate classification of certain claims for purposes of administrative convenience. 11 U.S.C. § 1122(b).

21.    Article II of the Plan places Claims and Interests into eight (8) different Classes, except for Administrative Claims, Professional Fee Claims and Priority Tax Claims, which are not classified. Each Claim or Interest placed in a particular class is substantially similar to the other Claims or Interests in that class. In addition, valid business, legal and factual reasons exist for the separate classification of each of the classes of Claims and Interests created under the Plan, and there is no unfair discrimination between or among holders of Claims and Interests. For example, the Plan properly and separately classifies the Priority Claims (Class 1), Lender Secured Claims (Class 2), the Subordinated Noteholder Claims (Class 3), the Other Secured

Claims (Class 4), the General Unsecured Claims (Class 5), and the Unpaid Management Fee Claims (Class 6) as each may hold (or may have held) different legal rights in property of the Estates. Likewise, old equity interests (Classes 7 and 8) are separately classified because they are legally dissimilar from the other classes.

## Specification of Unimpaired Classes (Section 1123(a)(2))

22. Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2). The Plan meets that requirement. Article III of the Plan summarizes all classes of Claims and Interests and states whether they are "impaired" or "unimpaired." *See* Article III of Plan.

## Treatment of Impaired Classes (Section 1123(a)(3))

23. Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3) The Plan satisfies that requirement. Article III of the Plan sets forth the treatment of impaired classes of Claims and Interests. *See* Article III of Plan.

## Equal Treatment Within Classes (Section 1123(a)(4))

24. Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The Plan so provides. Holders of Claims and Interests in the same classes will receive equivalent treatment. *See* Article III of Plan.

## Means for Implementation (Section 1123(a)(5))

25. Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation. *See* 11 U.S.C. § 1123(a)(5). The Plan meets that

requirement. *See* Article V of Plan, entitled "Means for Implementation of the Plan" (providing for (i) the Amended and Restated Credit Documents, (ii) creation of New Equity Holders, (iii) sources of cash for Plan distributions and transfers of funds among Debtors, (iv) issuance of New Plan Securities, (v) execution of a New Stockholders' Agreement, (vi) listing of new stock and transfer restrictions, (vii) cancellation of securities and agreements, (viii) securities exemption, (ix) continued corporate existence, (x) New Certificates of Incorporation and New Bylaws and other general corporate matters, (xi) creation and authority of new directors and officers, (xii) treatment of the Management Incentive Plan and the Employee Incentive Plan, (xiii) revesting of assets in the Reorganized Debtors, (xiv) waiver of avoidance actions and excluded claims and the preservation of causes of action, (xv) treatment of employee benefits and workers compensation programs, (xvi) execution of the New Management Agreement, (xvii) exemption from certain transfer taxes, and (xviii) payment of compromised Plan Related Fees and Installment Fees). Further, the Debtors have sufficient cash on hand to fund the required distributions under the Plan.

### Charter Provisions (Section 1123(a)(6))

26.     Section 1123(a)(6) of the Bankruptcy Code requires that the Plan provide for the inclusion in a debtor's charter of specific provisions (i) prohibiting the issuance of nonvoting equity securities and (ii) providing for an "appropriate distribution" of voting power among the securities possessing voting power. *See* 11 U.S.C. § 1123(a)(6). Pursuant to Section 5.9 of the Plan, upon the Effective Date of the Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist as a separate corporate entity in accordance with applicable non-bankruptcy law and pursuant to their corporate documents in effect prior to the Effective Date, except to the extent that such corporate documents are amended by the terms of the Plan and Plan Documents.

The Plan Documents include, among other things, New Certificates of Incorporation either previously filed or to be filed in the jurisdictions of organization of the Reorganized Debtors which prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a)(6). Accordingly, to the extent applicable, the Debtors have satisfied this subsection.

## Selections for Certain Positions (Section 1123(a)(7))

27.     Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions with respect to the manner of selection of any officer, director or trustee, or any successor thereto, be 'consistent with the interests of creditors and equity security holders and with public policy ….". *See* 11 U.S.C. § 1123(a)(7). The Plan meets that requirement. Pursuant to Section 5.12 of the Plan, directors of the Reorganized Debtors will be elected by majority equity holders, consistent with their interest in the future success of the Reorganized Debtors. Accordingly, the Plan satisfies section 1123(a)(7).

## 11 U.S.C. §1123(b)

28.     Section 1123(b) of the Bankruptcy Code allows a plan to include a variety of provisions, including any "provision not inconsistent with the applicable provisions of the Bankruptcy Code." 11 U.S.C. § 1123(b). All the provisions of the Plan are consistent with section 1123(b) of the Bankruptcy Code.

(i)  The Retention of this Court's Jurisdiction
     Is Permitted by 11 U.S.C. § 1123(b)

29.     The post-confirmation retention of jurisdiction by the Bankruptcy Court is permitted by the Bankruptcy Code:

> Section 1141 [of the Bankruptcy Code], which deals with the consequences of confirmation, says nothing about reducing the court's jurisdiction. The court therefore retains jurisdiction under its general statutory grants of jurisdiction to the extent those grants remain relevant postconfirmation.

6 QUEENAN, ET AL., CHAPTER 11 THEORY AND PRACTICE, A GUIDE TO REORGANIZATION § 32-04, at 32:6 (1994).

30.    Case law also establishes that the court may retain jurisdiction over the debtor or the property of the estate following confirmation.  *Gruen Mktg, Corp. v. Asia Commercial Co. (In re Jewelcor Inc.)*, 150 B.R. 580, 582 (Bankr. M.D. Pa. 1992) ("There is no doubt that the bankruptcy court's jurisdiction continues post confirmation to protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.") (citations omitted).

31.    Under Article XII of the Plan, this Court retains jurisdiction to the extent such retention is legally permissible, including jurisdiction over the allowance and classification of all Claims, the distribution process, matters related to the assumption or rejection of executory contracts and unexpired leases, and any disputes that arise under the Plan.  All of the matters outlined in Article XII of the Plan are matters over which this Court otherwise would have jurisdiction during the pendency of these Chapter 11 Cases.  *See* 28 U.S.C. §§ 157, 1134.  The continuing jurisdiction of this Court, as provided in Article XII of the Plan, is appropriate, necessary, and wholly consistent with applicable law.

      (ii) The Other Permissive Provisions in the
           Plan are Reasonable and Appropriate

32.    All other provisions of the Plan, including the assumption of certain executory contracts (expressly permitted by section 1123(b)(2) of the Bankruptcy Code) and the impairment and non-impairment of Classes, are permissible pursuant to section 1123(b) of the Bankruptcy Code.  In addition, the releases and injunction provisions contained in Article X of the Plan are consistent with precedent in this District.  *See In re Cont'l Airlines*, 203 F.3d. 203, 214 (3d. Cir. 2000).  In the case of third party releases under the Plan, the releases are entirely

consensual; creditors were afforded an opportunity to opt out of releases in connection with the execution and return of Plan ballots. In addition, the exculpation provisions of Section 10.04 of the Plan are consistent with precedent in this District. *See In re PWS Holding Corp.*, 228 F.3d 224, 245-47 (3d Cir. 2000).

### The Proponents of the Plan Comply with the Applicable Provisions of Title 11 (Section 1129(a)(2))

33. Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). In determining whether a plan proponent has complied with this section, courts focus on whether the disclosure and solicitation requirements of sections 1125 and 1126 have been adhered to. *See In re PWS Holding Corp.*, 228 F.3d at 248; *In re Resorts Int'l Inc.*, 145 B.R. 412, 468 (Bankr. D.N.J. 1990) (applying section 1129(a)(2) only to disclosure requirements of Bankruptcy Code); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code."); *see also* S. Rep. No. 95-589, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 65787, 5912 (Section 1129(a)(2) "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. 95-595, at 412 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 (same). As discussed below, the Debtors submit that they have complied with the provisions of section 1129(a)(2).

(i) The Debtors Have Complied with
Section 1125 of the Bankruptcy Code

Section 1125 of the Bankruptcy Code provides, in pertinent part:

(b)       An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or

- 18 -

interest, unless, at the time of or before such solicitation, there is
transmitted to such holder the plan or a summary of the plan, and a
written disclosure statement approved, after notice and a hearing,
by the court as containing adequate information . . . .

(c)     The same disclosure statement shall be transmitted to each
holder of a claim or interest of a particular class, but there may be
transmitted different disclosure statements, differing in amount,
detail, or kind of information, as between classes.

11 U.S.C. § 1125(b) & (c).

34.     The Disclosure Statement and Solicitation Order, among other things, (i)
approved the form and manner of Solicitation Packages and procedures for distribution thereof,
(ii) established notice and objection procedures for confirmation of the Plan, (iii) established a
voting record date and (iv) approved the forms of ballots and established procedures for voting
on the Plan.  The Debtors have filed affidavits and certificates of service demonstrating
compliance with section 1125 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure
Statement and Solicitation Order with respect to the transmittal of the Disclosure Statement, the
Plan and all related solicitation materials (the "Notice Affidavits").

35.     In addition, the Debtors have complied with all other orders of the Court entered
during the pendency of these Chapter 11 Cases and with the applicable provisions of the
Bankruptcy Code and Bankruptcy Rules with respect to postpetition disclosure and solicitation
of acceptances of the Plan.

(ii) The Debtors Have Complied with
      Section 1126 of the Bankruptcy Code

36.     Section 1126 of the Bankruptcy Code specifies the requirements for the
acceptance of a plan of reorganization.  Under section 1126 of the Bankruptcy Code, only
holders of allowed claims or interests in impaired classes that will receive or retain property

under a plan on account of such claims or interests may vote to accept or reject such plan.

Section 1126 of the Bankruptcy Code provides:

> (a)     The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan.
>
> *       *       *
>
> (f)     Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required.
>
> > *       *       *
>
> (g)     Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive any property under the plan on account of such claims or interests.

11 U.S.C. § 1126(a), (f), (g).

37.     Claims in Classes 1 (Priority Claims) and 4 (Other Secured Claims) (the collectively, the "Unimpaired Classes") are designated under the Plan as Unimpaired.  Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in the Unimpaired Classes are conclusively presumed to have accepted the Plan.

38.     Equity Interests in Classes 7 (Subsidiary Equity Interests) and 8 (Equity Interests) (collectively, the "Deemed Rejected Classes") will not receive or retain any property under the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, the Deemed Rejected Classes are deemed to have rejected the Plan.

39.     Claims in Classes 2 (Lender Secure Claims),  3 (Subordinated Noteholder Claims), 5 (General Unsecured Claims against JSC) and 6 (Unpaid Management Fee Claims) are (collectively, the "Impaired Classes Entitled to Vote").  As set forth in the Notice Affidavits, the Debtors solicited acceptances or rejections of the Plan from all Holders of Claims in the

- 20 -

Impaired Classes Entitled to Vote eligible to vote to accept or reject the Plan under the

Disclosure Statement and Solicitation Order.

40.     Section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance

of a plan by an impaired class of claims entitled to vote to accept or reject a plan:

> (c)     A class of claims has accepted a plan if such plan has been accepted by
> creditors, other than any entity designated under subsection (e) of this section, that
> hold at least two-thirds in amount and more than one-half in number of the
> allowed claims of such class held by creditors, other than any entity designated
> under subsection (e) of this section, that have accepted or reject the plan.

11 U.S.C. § 1126(c).

41.     As evidenced by the Voting Report, the Holders of Claims in Impaired Classes

Entitled to Vote that hold at least two-thirds in amount and more than one-half in number of the

allowed claims that voted have accepted the Plan.  Specifically, the Impaired Classes Entitled to

Vote, cast their ballots as follows:

| CLASS | ACCEPT THE PLAN | | REJECT THE PLAN | |
|---|---|---|---|---|
| | Dollar Amount Voted/ Percentage of Total Dollar Amount | Number of Votes/ Percentage of Number of Votes | Dollar Amount Voted/ Percentage of Total Dollar Amount | Number of Votes/ Percentage of Number of Votes |
| 2A | $50,761,717.33 (100.00%) | 8 (100.00%) | $0.00 (0.00%) | 0 (0.00%) |
| 2B | $50,761,717.33 (100.00%) | 8 (100.00%) | $0.00 (0.00%) | 0 (0.00%) |
| 3A | $28,188,434.24 (100.00%) | 1 (100.00%) | $0.00 (0.00%) | 0 (0.00%) |
| 3B | $28,188,434.24 (100.00%) | 1 (100.00%) | $0.00 (0.00%) | 0 (0.00%) |
| 5 | $353,172.46 (100.00%) | 78 (100.00%) | $0.00 (0.00%) | 0 (0.00%) |
| 6 | $5,765,753.00 (100.00%) | 1 (100.00%) | $0.00 (0.00%) | 0 (0.00%) |

42.     The Deemed Rejected Classes are deemed to have rejected the Plan.

Nevertheless, as discussed below, the Plan may be confirmed over the rejection of the Deemed

Rejected Classes because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejected Classes. *See* 11 U.S.C. § 1129(b). Accordingly, the Debtors have complied with the requirements of section 1129(a)(2) of the Bankruptcy Code.

## The Plan was Proposed in Good Faith (Section 1129(a)(3))

43. Section 1129(a)(3) of the Bankruptcy Code requires the Debtors to have proposed the Plan "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In determining good faith under section 1129(a)(3), courts address whether the proposed plan is consistent with the objectives of the Bankruptcy Code. *See In re PWS Holding Corp.*, 228 F.3d at 242 ("[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code") (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Hanson v. First Bank of S.D.*, 828 F.2d 1310, 1315 (8th Cir. 1987) (finding that a plan will be considered to have been proposed in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Bankruptcy Code"); *In re PPI Enters. (U.S.) Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) (same); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) (same). Good faith is to be viewed in light of the particular facts and the circumstances of the case. *See In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002) (examining the totality of the circumstances surrounding the formulation of a plan to determine good faith); *In re PPI Enters.*, 228 B.R. at 347 (describing the good faith test as "testing only whether the debtor's conduct in formulating, proposing, and confirming a plan displays the requisite honesty of intention."); *In re Century Glove, Inc.*, No. Civ. A. 90-400, 1993 WL

239489, at *4 (D. Del. Feb. 10, 1993) ("requirement of good faith must be viewed in light of the totality of circumstances surrounding the establishment of a Chapter 11 plan").

44.     The Debtors have met the good faith obligation imposed upon them under the Bankruptcy Code.  The Plan is the culmination of significant arm's-length negotiations among the Debtors, the Existing Lenders, Existing Agent, Agent, Revolving Lender, Subordinated Agent, Cortec, the Committee and other constituencies, and is proposed with the honest purpose of substantially reducing the Debtors' long-term debt service obligations and expeditiously making the distributions provided for in the Plan.  The Debtors have, therefore, fulfilled their obligations under section 1129(a)(3) of the Bankruptcy Code.

## Payments for Services or Costs and Expenses (Section 1129(a)(4))

45.     Section 1129(a)(4) of the Bankruptcy Code requires that any payments by a debtor "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," either be approved by the Court as reasonable or subject to approval of the Court as reasonable.  11 U.S.C. § 1129(a)(4).  The Debtors have complied with that requirement.  To date, all such payments have been approved by or are subject to the approval of this Court.  Section 12.2 of the Plan expressly carves out the retention of this Court's jurisdiction to decide and grant all matters related to the granting and denying, in whole or in part, in any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan.  The procedures for the Court's review and ultimate determination of the fees, costs and expenses to be paid by the Debtors satisfy the requirements of section 1129(a)(4).  *See In re Resorts Int'l Inc.*, 145 BR at 475 (as long as fees, costs and expenses are subject to final approval of court, section 1129(a)(4) is satisfied).

## Service of Certain Individuals (Section 1129(a)(5))

46.     Sections 1129(a)(5)(A)(i) and (ii) of the Bankruptcy Code require that the Plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5)(A)(i), (ii).  Section 1129(a)(5)(B) of the Bankruptcy Code further requires that the Debtors disclose the "identities of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."  11 U.S.C. § 1129(a)(5)(B).

47.     Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed director and officer of the Reorganized Debtors were disclosed in the Disclosure Statement or Plan Supplement.  Any subsequent Board of Directors of the Reorganized Debtors shall be elected, classified, and composed in a manner consistent with the Plan, Plan Documents and applicable nonbankruptcy law.  The appointment to, or continuation in, such office of each of the proposed directors and officers of each of the Reorganized Debtors is consistent with the interests of creditors and public policy and thereby satisfies section 1129(a)(5) of the Bankruptcy Code.

## Rate Changes (Section 1129(a)(6))

48.     Section 1129(a)(6) requires, with respect to a debtor whose rates are subject to governmental regulation following confirmation of the plan, that appropriate governmental approval has been obtained for any rate change provided for in the plan, or that such rate change be expressly conditioned on such approval.  *See* 11 U.S.C. § 1129(a) (6).  Section 1129(a)(6) is

inapplicable because the Plan does not provide for any changes in any rates subject to such regulatory approval. Having no applicability to the Plan, it follows that the requirements of section 1129(a)(6) of the Bankruptcy Code have been met.

### The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))

49. Section 1129(a)(7) of the Bankruptcy Code codifies what is generally referred to as the "best interests of creditors test." Section 1129(a)(7) provides:

> With respect to each impaired class of claims or interests-
>
> (A)    each holder of a claim or interest of such class
>
>     (i)   has accepted the plan; or
>
>     (ii)  will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7); *see In re Century Glove*, No. Civ. A. 90-400, 1993 WL 239489, *7 (D. Del. Feb. 10, 1993); *In re Jartan, Inc.*, 44 B.R. 331, 389 (Bankr. N.D. Ill. 1984).

50. In order to estimate what the members of each Impaired Class of Claims or Interests would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code, this Court must determine the liquidation value of the Debtors' assets and the amount and priority of the Allowed Claims against the Debtors. Liquidation value refers to the amount that would be available if the Debtors' Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code and the Debtors' assets were liquidated by a chapter 7 trustee. Section 1129(a)(7) of the Bankruptcy Code specifies that the liquidation analysis applies only to Classes of Impaired Claims or Equity Interests that reject the Plan or are deemed to reject the Plan.

51. The best interests of creditors test is satisfied as to each Impaired Class of Claims and Interests because Classes 2A, 2B, 3A, 3B, 5 and 6 have voted to accept the Plan and the

distributions described for the remaining Impaired Classes, the Deemed Rejected Classes, are in an amount that is not less than that which they would receive in a chapter 7 liquidation of the Debtors' estates. Recoveries for the Impaired Classes in a hypothetical chapter 7 liquidation are reflected in the liquidation analysis set forth in Exhibit C to the Disclosure Statement. A chapter 7 liquidation of the Debtors would decrease the ultimate proceeds available for distribution to creditors versus the Plan because of, among other things, (i) failure to realize the maximum "going concern" value for the Debtors' assets, (ii) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisers to such trustee, and (iii) the substantial time that would elapse before creditors would receive any distribution on their claims. The Debtors' liquidation analysis shows that in a chapter 7 liquidation of the Debtors there would be no distributions to the Holders of Equity Interests or Subsidiary Equity Interests due, among other things, to the Debtors' substantial secured debt obligations. The Plan, therefore, complies with section 1129(a)(7) of the Bankruptcy Code.

**Acceptance by All Impaired Classes (11 U.S.C. § 1129(a)(8))**

52.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests that is impaired under the Plan accept the Plan. Holders of Claims in Class 2A, 2B, 3A, 3B, 5 and 6 have accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code. Classes 7 and 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan, therefore, does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Classes 7 and 8. Notwithstanding the lack of compliance with section 1129(a)(8) of the Bankruptcy Code with respect to the Deemed Rejected Classes, the Plan is confirmable

WM01/ 7852870.3

because, as described below, the Plan satisfies section 1129(b)(2) of the Bankruptcy Code with respect to such Classes.

**Treatment of Priority Claims (Section 1129(a)(9))**

53.     Section 1129(a)(9) contains a number of requirements concerning the payment of priority claims. *See* 11 U.S.C. § 1129(a)(9). The Plan satisfies the requirements of section 1129(a)(9). Under the Plan, holders of priority claims under sections 507(a) of the Bankruptcy Code are unimpaired. *See* Article III, Section 3.03 of Plan (providing that holders of Priority Claims will receive Cash equal to the full amount of Allowed Priority Claims Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Claim becomes Allowed, and (iii) the date such claim becomes due and payable in the ordinary course of business; (b) in Cash on such other terms and conditions as may be agreed between the Holder of each such Allowed Priority Claim and the Reorganized Debtors; or (c) in deferred Cash payments, to the extent permissible under the Bankruptcy Code). The Plan also provides for payment in full of Allowed Administrative Claims on, or as reasonably practicable after the later of (i) the Effective Date or (ii) the date on which an Administrative Claim becomes an Allowed Administrative Claim. *See* Article II, Section 2.01 of Plan. The Plan further provides that Allowed Professional Fee Claims shall be paid in full in accordance with Sections 2.01(b) and 14.01(d) of the Plan.

**Acceptance of At Least One Impaired Class (Section 1129(a)(10))**

54.     If a plan has one or more impaired classes of claims, section 1129(a)(10) requires that at least one such class vote to accept the plan, determined without including any acceptance of the plan by any insider. *See* 11 U.S.C. § 1129(a)(10). In the instant case, Classes 2A, 2B, 3A,

3B, 5 and 6 have voted to accept the Plan. Thus, section 1129(a)(10) of the Bankruptcy Code is satisfied.

**Feasibility (Section 1129(a)(11))**

55.    Section 1129(a)(11) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11); *see In re Armstrong World Indus., Inc.*, 348 B.R. 136, 167 (D. Del. 2006). This requirement encompasses two related but independent determinations: (i) that the debtor is able to consummate the provisions of the plan and (ii) that if consummated, the plan will enable the debtor to emerge from bankruptcy as a viable entity. *See In re NII Holdings*, 288 B.R. at 364 (finding that a plan was feasible because it allowed the reorganized entity to have sufficient cash flow and capital resources to pay its liabilities as they become due and to satisfy its capital needs for the conduct of its business); *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) ("This definition [of feasibility] has been slightly broadened and contemplates whether [(i)] the debtor can realistically carry out its plan . . . and [(ii)] whether the plan offers a reasonable prospect of success and is workable." (citation omitted); *In re Rolling Green Country Club*, 26 B.R. 729, 734 (Bankr. D. Minn. 1982) ("The court assumes that the word 'confirmation' in [§ 1129(a)(11)] contemplates as well an execution or consummation of the plan, the real intendment of the subsection being to avoid confirmation of plans which even if consummated are fruitless as an instrument to reorganization.").

Courts generally have held that the first determination of the feasibility requirement contemplates "the probability of actual performance of the provisions of the plan."

- 28 -

*Clarkson v. Cooke Sales & Serv., Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985)

(quoting *Chase Manhattan Mortgage & Realty Trust v. Bergman (In re Bergman)*, 585 F.2d

1171, 1179 (2d Cir. 1978)) *distinguished on other grounds by In re Cont'l Airlines*, 218 B.R. 324

(D. Del. 1997). Inasmuch as the feasibility requirement focuses on probability, the ability to

perform need not be guaranteed. Rather, "[t]he test is whether the things which are to be done

after confirmation can be done as a practical matter under the facts." *Id.*; *see also In re Orlando

Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("Feasibility does not require that

substantial consummation of the plan be guaranteed; rather, the plan proponent must demonstrate

that there be a reasonable assurance of compliance with plan terms."); *In re IPC Atlanta L.P.*,

142 B.R. 547, 560 (Bankr. N.D. Ga. 1992) ("the Court will look to see whether the Debtor can

realistically carry out the provisions of the plan, and whether the plan offers a reasonable

prospect of success.").

       The second determination – that the debtor, after consummation of the plan, is

likely to reorganize as a successful, viable entity – also does not require that success be

guaranteed. 7 COLLIER ON BANKRUPTCY ¶ 1129.03[11], at 1129-74.1 (15th ed. rev. 2007).

Instead, the focus is on whether "the plan presents a workable scheme of organization and

operation from which there may be a reasonable expectation of success." *In re Drexel Burnham

Lambert Group, Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ; *see also Kane v. Johns-

Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan

offers a reasonable assurance of success. Success need not be guaranteed.") *distinguished on

other grounds by In re Cont'l Airlines*, 203 F.3d 203 (3d Cir. 2000); *In re Mayer Pollock Steel

Corp.*, 174 B.R. 414, 421 (Bankr. E.D. Pa. 1994) ("We note that, except for [two cases], we have

never relied on § 1129(a)(11) as a basis to deny confirmation of a debtor's plan."); *In re Texaco

- 29 -

*Inc.*, 84 B.R. 893, 910 (Bankr. S.D.N.Y. 1988) ("All that is required is that there be reasonable assurance of commercial viability.").

The feasibility requirement is not designed to prevent confirmation of a plan that offers a reasonable likelihood of success. As noted by the Ninth Circuit Court of Appeals, "[t]he purpose of § 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Haw., Inc. v. Shakey's Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (citation omitted); *see also In re Drexel Burnham*, 138 B.R. at 762 ("Just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required.").

The proposed Plan has more than a reasonable likelihood of success. The transactions contemplated under the Plan will enable the Debtors to continue their current operations and will eliminate a substantial portion of their long-term debt obligations. By substantially reducing their existing debt and receiving the proceeds of the Amended and Restated Credit Agreements, the Debtors will be better positioned to service debt obligations, generate free cash flow to reinvest in their business, and create value for stockholders. Thus, the Plan provides for a workable scheme of reorganization with more than a reasonable likelihood of success and therefore satisfies section 1129(a)(11) of the Bankruptcy Code.

**Payment of Certain Fees (Section 1129(a)(12))**

56. Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable under 28 U.S.C. § 1930 be paid or that the plan provide for their payment on the effective date of the plan. *See* 11 U.S.C. § 1129(a)(12). Pursuant to Section 14.02 of the Plan, "on or before the

Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code." Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**Continuation of Retiree Benefits (Section 1129(a)(13))**

57.      Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of retiree benefits, at levels established pursuant to section 1114 of the Bankruptcy Code, for the duration of the period that the debtor has obligated itself to provide such benefits. *See* 11 U.S.C. § 1129(a)(13).  Pursuant to Section 5.17 of the Plan, on and after the Effective Date, the Reorganized Debtors shall honor, in the ordinary course of business, any unrejected contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or order entered by the Bankruptcy Court approving a pleading seeking payment of, for, among other things, compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time, and any other benefit plan.  Furthermore, pursuant to section 7.05 of the Plan, except to the extent (i) otherwise provided for in the Plan, (ii) previously assumed or rejected by an order of the Bankruptcy Court entered on or before the Confirmation Date, (iii) the subject of a pending motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) previously terminated, all employee compensation and benefit programs of the Debtors in effect during the pendency of the Chapter 11 Cases, including all health and welfare plans, 401(k) plans, and all benefits subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or

after the Petition Date and in effect during the pendency of the Chapter 11 Cases, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed and assigned pursuant to section 365 of the Bankruptcy Code and the Plan. Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(14) Through 11 U.S.C. § 1129(a)(16) Are Inapplicable

58.     Based on the facts of these Chapter 11 Cases, sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable.

### Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b))

59.     Section 1129(b)(1) of the Bankruptcy Code provides, in pertinent part:

> [I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).

60.     Section 1129(a)(8) requires that each class of claims or interests either (i) has accepted the plan or (ii) is not impaired under the plan. Pursuant to section 1126(g), "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g). Pursuant to section 1126(g), the Deemed Rejected Classes are deemed to have rejected the Plan because the Deemed Rejected Classes will not receive or retain any property thereunder. As explained below, however, the Plan is fair and equitable with respect the Deemed Rejected Classes and does not discriminate unfairly against them, and the Plan therefore satisfies the requirements of section 1129(b)(1) of the Bankruptcy Code.

(i) The Plan Is Fair and Equitable With
    Respect to the Deemed Rejected Classes

61.     Section 1129(b)(2)(C) of the Bankruptcy Code provides that the following

requirements must be met with respect to a class of interests:

> (i)     the plan provides that each holder of an interest of such class receive or
> retain on account of such interest property of a value, as of the effective date of
> the plan, equal to the greater of the allowed amount of any fixed liquidation
> preference to which such holder is entitled, and the value of such interest; or
>
> (ii)     the holder of any interest that is junior to the interests of such class will
> not receive or retain under the plan on account of such junior interest any
> property.

11 U.S.C. § 1129(b)(2)(c).

62.     The Plan is fair and equitable with respect to the Deemed Rejected Classes

because, as discussed above, the Debtors' Liquidation Analysis established that in a liquidation,

Holders of equity Interests would receive no distribution on account of their Interests.

Furthermore, no Class junior to any of the Deemed Rejected Classes will receive any

distributions under the Plan.

(ii) The Plan Does Not Discriminate Unfairly
     With Respect to the Deemed Rejected Classes

63.     The Plan does not "discriminate unfairly" with respect to the Deemed Rejected

Classes.  The test for unfair discrimination has been summarized as follows:

> [I]f the plan protects the legal rights of a dissenting class in a manner consistent with the
> treatment of other classes whose legal rights are intertwined with those of the dissenting
> class, then the plan does not discriminate unfairly with respect to the dissenting classes.

7 COLLIER ON BANKRUPTCY ¶ 1129.04[3][a], at 1129-77 (15th ed. rev. 2007), quoting

Kenneth N. Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy*

*Code*, 53 AM. BANKR. L.J. 133, 142 (1979); *see also In re Johns-Manville*, 68 B.R. at 636

("[generally speaking, this standard ensures that a dissenting class will receive relative value

- 33 -

equal to the value given to all other similarly situated classes"). Class 7 is composed of Holders of Subsidiary Equity Interests, Class 8 is composed of Holders of Equity Interests. None of the Holders in these Classes will receive any distribution. The Debtors therefore respectfully submit that the Plan does not "discriminate unfairly" with respect to the Deemed Rejected Classes and accordingly satisfies the requirements of section 1129(b).

## IV. DEBTORS REPLY TO COMMITTEE RESPONSE

64.    The Committee supports confirmation of the Debtors' Plan and for good reason. Trade creditor claims will be paid in full. Notwithstanding this extraordinary recovery, the Committee "proposes" that this Court amend the Debtors' Plan and truncate the Debtors' ability to dispute claims. The Committee cites no authority for this proposal and its factual underpinnings are at best dubious.

65.    While it is true that the Debtors committed to paying trade claims in full when the Debtors filed their First Amended Plan back in February, it is disingenuous to suggest that the Debtors have been dilatory in pursuing confirmation. As the Committee is aware, the Debtors' First Amended Plan did not have the support of the Subordinated Agent and Subordinated Noteholders and ultimately the Debtors' plan sponsor withdrew support for the Plan. As the Committee stood on the sidelines, the Debtors explored plan alternatives and negotiated the Plan *sub judice* which provides discounted recoveries to the Debtors' senior secured lenders and subordinate lenders while ensuring junior trade creditors get paid in full with senior secured and subordinated lenders' consent.

66.    It is also disingenuous for the Committee to suggest that there are no disputed claims left to resolve when the Committee's professionals were given a confidential preliminary list of such claims. Notwithstanding all of the above, the Debtors are sensitive to the

- 34 -

Committee's concerns and after consultation with the Subordinated Agent, who will control the Reorganized Debtors' board upon emergence, and the Agent, who will receive all of the remaining cash in the Plan Distribution Account after all Allowed Claims are paid, the Debtors acquiesced to the Committee's request by shortening the Claims Objection Deadline from 365 days to 90 days. Now the Committee wants more. At the hearing on the Disclosure Statement it reserved the right to request the Claims Objection Deadline be reduced to 60 days and now it is proposing 30. The Debtors respectfully submit that such relief is unwarranted, is unduly prejudicial to the Debtors and their reorganizational efforts, and should be denied.

## V. CONCLUSION

For the foregoing reasons, the Debtors respectfully submit that the Court should (i) confirm the Plan, and (ii) grant the Debtors such other and further relief as is just and proper.

Dated: December 17, 2010

**DRINKER BIDDLE & REATH LLP**

/s/ Andrew C. Kassner
Andrew C. Kassner (DE 4507)
Howard A. Cohen (DE 4082)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

– and –

Michael P. Pompeo (admitted *pro hac vice*)
500 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 360-1100
Facsimile: (973) 360-9831

ATTORNEYS FOR THE DEBTOR
AND DEBTOR IN POSSESSION

WM01/ 7852870.3